SAMUEL BUNKER, In Equity, *vs.* WILLIAM BARRON.

Somerset. Opinion June 3, 1899.

*Mortgages. Future Advances. Subsequent Purchaser. Bond.*
*Notice. Interest.*

A mortgage may properly be made to secure future advances in addition to present indebtedness.

When the present indebtedness is for money hired upon the security of a farm, other money subsequently hired by the mortgagor of the mortgagee with which to purchase other land for the enlargement of the farm, may appropriately be covered by a clause in the mortgage that it shall secure "also all other debts which the mortgagor may contract with the mortgagee."

Where the mortgage consists of an absolute deed duly recorded and a conditional bond back for reconveyance which has not been recorded, an after-purchaser is not bound by a provision in the bond securing future advances, unless he had actual notice of the terms of the bond when his own conveyance was taken.

A promise to pay interest in excess of six per cent per annum does not in this state bind the promisor unless the agreement be in writing.

Parties to a mortgage, cannot, as against subsequent parties in interest, stipulate by an unrecorded agreement for any terms not a part of the original contract.

See *Bunker* v. *Barron*, 79 Maine, 62.

ON REPORT.

Bill in equity to redeem land in Embden, Somerset county. This cause came on for hearing on bill, answers, proofs, master's

report, exceptions to the master's report, and evidence before the master as reported by him; the principal question being to determine the amount due upon the mortgage set forth in the plaintiff's bill. And important questions of law arising for consideration, the cause, with the consent of the parties, was reported to the law court for decision, to determine the whole amount due upon the mortgage, and all questions of costs between the parties, and enter such decree, or decrees, as will be in accordance with the law of the case and the equitable rights of the parties.

The principal facts set out in the report are as follows:—The suit was originally brought against William Barron and entered at the December term of the Supreme Judicial Court, 1887. At the September term, 1889, a master was appointed to report the amount due upon the mortgage.

Hearings were had in 1890, and written arguments were subsequently submitted by both parties to the master, the principal questions argued being the amount of rents with which the mortgagee should be charged, and the amount of debt to which he would be entitled under the clause in the condition of the mortgage relating to future debts.

In July, 1895, William Barron died, no report having then been made by the master. But the knowledge of his death did not come to the master, or to the counsel of either party until near, or during, the following December term of the court.

Just at the close of the September term, 1895, the master, without previous notice to the parties, and without submitting to them a draft of his proposed report, filed his report. The counsel for William Barron, not then being aware of his death, immediately filed a motion to have the report re-committed to the master with instructions to report the evidence submitted to him by the parties. The counsel for the plaintiff not being present at the close of the term, the court directed the motion to stand over to December term for argument. In the meantime, on October 17, the master filed his report of all the evidence submitted to him by the parties. At the December term following, the death of William Barron was suggested to the court, and duly entered of record, and the

plaintiff's counsel moved for, and obtained leave to summon in Josiah C. Holway, Executor of William Barron, and J. Frank Barron, his son, to whom he had conveyed the mortgaged premises, and other real estate.

Upon motion of the plaintiff's counsel, the previous motion of the counsel for William Barron, that the report of the master be re-committed with instructions to return with it a report of the evidence, was overruled by the court. To this ruling exceptions were taken by the counsel for William Barron, and are considered in connection with this report of the case. In those exceptions are printed a copy of the bill in equity, the master's report, and his report of the evidence before him, including the original mortgage and all the subsequent transactions between the mortgagor and mortgagee and the subsequent conveyances of the mortgaged property until it came into the hands of William Barron, the original defendant. And it was agreed that reference to these papers may be made by the parties. The report of the evidence in *Bunker* v. *Barron*, 79 Maine, 62, was before the master by agreement of the parties at the hearing, and all the evidence and documents in that report were made evidence for him. And that report was referred to as part of the evidence before the master. And it contained all the evidence submitted by both parties to the master, with the exception of the parol evidence taken by him, as to the income of the land and the repairs and taxes. The parties also agreed that in determining the amount due upon the mortgage, the report of the master as to the value of the rents and profits should be taken as it stood.

The present defendants, Josiah C. Holway, Executor, and J. Frank Barron, grantee, in obedience to the summons of the court, duly appeared and filed answers, and also filed exceptions to the master's report. The evidence upon which both parties rely to sustain their several positions and contentions, is to be found in the master's report, his report of the evidence before him, including the report of the evidence in *Bunker* v. *Barron*, 79 Maine, 62 and the decision of the court in that case. The foregoing constitutes the report of the evidence in the present case.

Other facts appear in the opinion of the court.

*O. D. Baker and F. L. Staples*, for plaintiff.

When a mortgage is given to secure further advances it means that the future advances are to be made upon the security pledged by the mortgage; and if the mortgagee makes other loans, taking other property, not included in the mortgage, as security for the later loans, he cannot, in a suit to redeem, throw the whole debt upon the mortgaged property which the junior mortgagee desires to redeem, and compel him to pay the loans upon both pieces of property by merely asserting that the second loan was a future advance under the first mortgage. 1 Jones on Mortgages, §§ 364–378. For a very complete discussion of the law on this subject see also 11 Am. Law Reg. (1872) 273.

Paine cannot tack to his original mortgage any debt not secured thereby, and require its payment by the junior mortgagee as a condition of his right to redeem that property. 1 Jones on Mortgages, § 360, citing *Bacon* v. *Cottrell*, 13 Minn. 194.

The law does not allow interest upon interest, even where a promissory note is made payable "with interest annually." *Doe* v. *Warren*, 7 Maine, 48; *Bannister* v. *Roberts*, 35 Maine, 75; *Kittredge* v. *McLaughlin*, 38 Maine, 513; *Parkhurst* v. *Cummings*, 56 Maine, 155; *Whitcomb* v. *Harris*, 90 Maine, 206; 2 Jones on Mortgages, § 1139.

"Although the amount received in any year be insufficient to pay the interest accrued, the surplus of interest must not be added to the principal to swell the amount on which interest shall be paid for the following year; for that would result in the charging of interest upon interest, which is not allowed; but the interest continues on the former principal until the receipts exceed the interest due. These are the principles upon which the mortgagee's interest account is everywhere made up; and the cases in which they are stated are many and in general accord." *Dean* v. *Williams*, 17 Mass. 417.

*D. D. Stewart*, for defendants.

A note given for the annual interest falling due on another note, is equivalent to bringing a suit for such interest, and such

new note is secured by the mortgage. *Parkhurst* v. *Cummings*, 56 Maine, 160.

What is the amount now due on this mortgage? The defendant submits that Bunker, having full notice for the provision for further advances, has no other or greater rights than Quint would have. Even a verbal agreement by the mortgagor that future advances should be considered as secured by the mortgage, will be enforced by the court sitting in equity, under a bill to redeem the mortgage brought by the original mortgagor, or by his grantee who has notice of such verbal agreement. Such grantee has his rights and nothing more, and must pay all such advances made under such verbal agreement before he will be allowed to redeem. *Joslyn* v. *Wyman*, 5 Allen, 62; *Stone* v. *Stone*, 10 Allen, 74; *Hilton* v. *Lothrop*, 46 Maine, 297. A fortiori, when the mortgage itself provides in express terms for such future advances. That mortgages to secure future advances are valid has long been settled. *Bank* v. *Cunningham*, 24 Pick. 270; *Lawrence* v. *Tucker*, 23 How. 15; *Googins* v. *Gilmore*, 47 Maine. 9; *Hill* v. *Farrington*, 6 Allen, 80; 1 Jones on Mortgages, §§ 365, 373.

SITTING: PETERS, C. J., EMERY, HASKELL, WHITEHOUSE, STROUT, SAVAGE, JJ.

PETERS, C. J. On May 7, 1868, Mary Quint and her sons William and Draxey Quint, being possessed of a farm in Embden, the same real estate described in the complainant's bill, conveyed the property to John S. Paine by warranty deed which was immediately duly recorded. Lydia Quint, wife of William, not joining in the deed, afterwards conveyed her dower interest to Paine, by her deed duly recorded, for the consideration of $100.00.

On the same day of the conveyance, and as a part of the same transaction, Paine gave the Quints a bond for the re-conveyance of the property to them upon their payment to him of the sum of $300.00, $100.00 in three years from date, $100.00 in four years and $100.00 in five years from date, with interest annually, "and also all other debts which the said Quints shall contract with the said Paine." This bond was not recorded until May 26, 1876.

The court has declared this transaction to be a mortgage. *Bunker* v. *Barron*, 79 Maine, 62. The Quints gave no notes for the moneys to be paid by them for the re-conveyance, but on January 7, for each of six successive years afterwards gave Paine a note of $36.00 for the interest on the $300.00 at twelve per cent interest thereon, said notes themselves being on interest, but never a cent being paid on either the notes or the bond to the end.

November 7, 1874, the Quints, having purchased another lot of land called the Eli Walker lot, borrowed $225.00 more of Paine to complete payment on that lot, and gave Paine a warranty deed of the lot as security for the money advanced for such purchase.

But before the date of this last transaction, namely, September 12, 1874, William Quint had mortgaged the farm to the complainant for $400.00, the mortgage being at once recorded; and the complainant, acquiring all the rights of William and Draxey Quint, Mary having in the mean time deceased, leaving William and Draxey her sole heirs, brings this bill to redeem the property from the Paine mortgage.

On February 1, 1875, Paine and the Quints met for the purpose of computing the indebtedness to Paine, one Thomas Gray having been called in to ascertain for them the amount due. In this settlement was included the amount of the first loan $300,00 with interest compounded annually at twelve per cent; the amount of the second loan, $225.00 with twelve per cent interest; also the $100.00 paid by Paine for Lydia Quint's right of dower in the farm, together with the six notes of thirty-six dollars each; twelve per cent being computed and compounded annually on all the items without exception. The result was that William Quint gave Paine a new note for $872.34 and took a new bond to himself, covering the home farm and the premises purchased of Walker.

Mr. James O. Bradbury was appointed master to ascertain the amount to be paid for redemption; and as Paine took possession of the home farm in the spring of 1878, it became necessary to ascertain the rents and profits of the place annually, and to apply them in settlement of the principal. In this way the master allowed simple interest on the first principal, the $300.00, and also on the $100.00

paid for the release of the dower, no one objecting to the allowance of the latter item, and the result of his figures brought Paine indebted to the farm in a net balance of $32.70 at the end of the year 1893. And so the master finds there was nothing due on the debt secured by the mortgage, but that it had been overpaid in the above sum of $32.70. This result allows simple interest annually on all principal.

The master's report correctly disallows anything more than simple interest. The small notes were without consideration so far as double interest was concerned, and simple interest was received which was all the contract called for. The law of usury was in force when the contract was made, and the law of to-day even is that only six per cent is recoverable unless it is agreed in writing to pay more. Counsel for the defense cites this phrase for *Parkhurst* v. *Cummings*, 56 Maine, 160: "He may take a note when the interest becomes due and the mortgage may be a security for such note." In that case the note called for interest annually, and the new note covered six per cent interest while these notes covered twelve. · The court further says in that case: "But, after the principal becomes due, annual interest cannot be recovered in a separate suit." Several of these small notes were given after the principal was due.

But a conclusive answer to the recovery in full of these small notes is the principle that "parties to a mortgage, cannot, as against subsequent parties in interest, stipulate by an unrecorded agreement for a higher rate of interest than that provided in the mortgage as recorded; nor can they incorporate into the mortgage any additional indebtedness." Jones Mort. § 361. Paine cannot impose terms and conditions upon the second-mortgage holder which were not properly a part of the contract between him and the Quints.

The master rejected the claim of Paine to recover under his mortgage the sum of $225.00 advanced for payment of the Walker place. We are not ourselves free of doubt on the point, though we incline in favor of its allowance. The objection to its allowance is that it is an independent transaction and not naturally

a part of the first mortgage. The words in the bond providing for the security of further advances are: "and also all other debts which the Quints shall contract with the said Paine." The Quints got Paine to pay this sum, and about three months afterwards included the sum in a general note of William Quint. It was for the purchase of a wood lot to supply the farm, as is somewhere stated, and from indications without any direct statement, is, we should judge, adjoining or near to the farm. This lot alone would not presumably be worth relatively so much when separated from the ownership of the farm.

It is contended that this was a separate and distinct transaction between the parties because Paine took an absolute title to the lot by a warranty deed from the Quints. That cannot be a conclusive fact. Paine seemed to have his money secured by all the possible properties.

The more important proposition of the whole case is whether the complainant, when he took his mortgage, September 12, 1874, had at the time notice of Paine's bond to Quints and the terms of it; for, if he did not, the bond not being at the time recorded there would be no notice on the record that the transaction was a mortgage to secure present and also future advances. It is well settled that the record must disclose the fact. Jones Mort. § 364. We are however assuming that actual notice is equivalent to a disclosure by record.

The evidence on notice is within a brief compass. The complainant had possession of both bonds, the one dated May 7, 1868, made before the mortgage to himself, and the one dated February 1, 1875, made five months after his mortgage, the complainant procuring both bonds to be recorded May 26, 1876. He says he got both of Quint, but does not know when. Nor does Quint remember when he delivered them to him. The complainant could not have received both bonds before taking his own mortgage, because the second one was not in existence until afterwards. And the case on this material point hinges right here. Unless the complainant had seen or knew of the bond why should he have taken a mortgage of the farm in September, 1874, when the records

disclosed that the absolute title had stood in Paine since 1868? And this presumption is strengthened by the fact that the bond was in the complainant's possession at a later if not an earlier date than his own mortgage.

Though the mortgage to the defendant calls only for optional and not obligatory future advances, still the intervening mortgage to the complainant is only constructive notice of an intended termination of the right of the defendant, and such notice is not enough as it must be direct and personal. Such seems to be the prevailing doctrine of the authorities, though there are cogent and finely reasoned cases in some of the leading courts to the contrary. Jones Mort. § 372, and cases.

Some technical points have been emphasized in the arguments, but none of them seem to be now material. There was a loud call for the production of the evidence exhibited before the master, and that was sent in. It is now agreed in the report, that, "in determining the amount due upon the mortgage the report of the master as to the value of the rents and profits is to be taken as it stands." His report therefore is to be accepted and acted on in all respects as correct, excepting where we have determined upon a departure from it in this opinion. Objections have been urged against the master's report in matters merely of form which are no longer worth consideration, as every essential question broached on either side has been fully considered by the court.

The conclusion therefore is that a new marshaling of the figures must be made before a final result can be reached. And for that purpose the case must be referred again to the old or to a new master. Such master will allow the defendant the item of $225. and interest thereon at the rate of twelve per cent (agreed by Quints) from Nov. 7, 1874, the date when the money was advanced by Paine. Against this item there will be calculated $32.70 the balance found due the farm for balance of rents and profits over principal received by Paine at end of the year 1893, and also further deductions will be allowed for such rents and profits as have been received from that date (1893) down to the date of the final findings by the master; and also further charge

against the defendant will be reckoned for the reasonable rents and profits enjoyed by the defendant of the Walker lot so called for such time as he has been in possession of that lot; and, if a redemption is decreed from the mortgage in suit, the defendant will be required to assign to the complainant his title to the Walker lot, so that the complainant may have a lien thereon for the amount he may be required to advance thereon; and no final decree will be filed in the case until the facts and results are finally found as are indicated in this opinion.

*Case remitted to a single justice for further*
*order and proceedings before him.*