### Alfred H. Bloom v. First Vermont Bank and Trust Company and Theodor H. Kaufman

[340 A.2d 78]

No. 148-74

Present: Barney, C.J., Smith, Keyser, Daley and Larrow, JJ.

Opinion Filed June 3, 1975

*J. Garvan Murtha, Esq.,* of *Kristensen, Cummings & Price,* Brattleboro, for Plaintiff.

*Barber & Barber,* Brattleboro, for First Vermont Bank.

**Keyser, J.** This action arises over a disputed claim to proceeds from the sale of certain property known as the Giant Store premises in Brattleboro, Vermont. Although the entire factual background surrounding the case is extensive, for purposes of this appeal a brief account of the following pertinent events is sufficient.

On April 22, 1964, defendant Theodor Kaufman acquired the premises in question from the American Radiator and Standard Sanitary Corporation. Kaufman that day gave defendant First Vermont Bank and Trust Company a $100,000 note secured by a mortgage on the Giant Store premises. The mortgage deed held by the bank contained a so-called "debt accrual" clause and covered, in addition to the $100,000 note, "all other notes, debts, sums of money and liabilities which are now due or which hereafter may become due from the said mortgagor to the said Vermont Bank and Trust Company, its successors and/or assigns, however specified, and whether direct or indirect, including without limitation, any present existing and future liabilities of the mortgagor by reason of being or becoming a maker, endorser, guarantor or surety on the obligations of any other party, person, or persons or evidences of indebtedness to this mortgagee."

Kaufman's attorney subsequently wrote First Vermont on May 13, 1964, and, pursuant to another clause of the mortgage deed, requested permission for Kaufman to convey a portion of the Giant Store premises to his partner Alfred H. Bloom, plaintiff herein. The bank granted its consent and on Septem-

ber 22, 1964, Kaufman conveyed one-half of the Giant Store premises to Bloom.

In early 1973, Kaufman telephoned an officer at First Vermont and requested a $100,000 personal line of credit on an unsecured basis. Kaufman was informed that the bank would require a loan application and financial statement from him. These requirements were satisfied, a $100,000 line of credit was approved by the bank, and a demand note in that amount was executed by Kaufman on February 5, 1973.

Kaufman subsequently suffered financial reversals and on June 1, 1973, he and Bloom entered into a contract to sell the Giant Store premises to Evans Product Company for $165,000. A dispute then arose between Bloom and First Vermont as to the extent of the latter's interest in the Giant Store premises as security for the second $100,000 note which Kaufman had executed on February 5, 1973. It was agreed, however, that the sale of the Giant Store premises be consummated. Bloom, Kaufman, and First Vermont entered into an agreement under which $51,326.32 from the proceeds of the sale, representing the principal sum due and owing from Kaufman to Vermont on the second $100,000 note, was placed in escrow "pending judicial determination of the validity of the bank's mortgage lien to secure the payment of said note balance as claimed by said bank." The first $100,000 note was discharged on the day of closing on the Giant Store premises.

This action, instituted pursuant to the escrow agreement by plaintiff Bloom in Windham Superior Court, was tried to the court and resulted in a judgment in Bloom's favor for the full amount of the escrow deposit, plus interest. This appeal by First Vermont followed.

The parties here have directed considerable attention to the sufficiency of the bank's notice of Bloom's intervening interest in the Giant Store premises and to the effect of this notice on the priority of the claimed interests. But these issues cannot be reached without first ascertaining the nature of the claimed interests themselves.

Bloom's interest in the proceeds from the sale of property of which he was co-owner is patent. The bank's legal interest, on the other hand, is less apparent. It is argued here that this interest springs from the original mortgage deed and its so-called "debt accrual" clause. The 1973 demand note, First Ver-

mont contends, is secured by the Giant Store premises under that clause.

■ Although this Court has not yet had occasion to address the particular point here in question, we are in agreement with the Supreme Court of Ohio that a prerequisite to the mortgagee's secured position under accrual clauses of this nature is a showing that the subsequent "advance" was intended by the parties to be secured by the prior mortgage. *Second National Bank of Warren* v. *Boyle,* 99 N.E.2d 474 (Oh. 1951). The court below found that "the defendant Bank and defendant Kaufman intended that the second loan of $100,000 to defendant Kaufman on 5 February 1973 be an unsecured loan." The parties were free to contract on this basis so long as the requirements of 8 V.S.A. § 1205 were met (as they were here), and the finding of the lower court that they did so is amply supported by the evidence.

■ It is undisputed that Kaufman's request was for an unsecured line of credit, that the loan officer in charge recommended approval of the loan to the bank's discount committee as an unsecured loan, and that the minutes of the discount committee meeting disclose that Kaufman's request was granted for an "unsecured short term line of credit in the amount of $100,000." Moreover, the $100,000 note signed by Kaufman on February 5 was clearly a demand note and, in contrast to the earlier $100,000 note executed in 1964 and secured by the mortgage in question, no mention was made of any collateral to be pledged.

First Vermont's challenge to the lower court's finding is based primarily on the testimony of the recommending loan officer who testified below that in reporting verbally to the discount committee, "I discussed a mortgage loan balance on the existing mortgage" and who rather self-servingly characterized the 1973 loan as "an unsecured loan with additional collateral under the accrued clause of the mortgage." These statements scarcely justify a conclusion here that the finding of the lower court was "clearly erroneous." V.R.C.P. 52(a).

The bank has simply failed to sustain its burden of establishing that the money advanced after the mortgage was executed was intended by the parties to be secured thereby. *See*

*Peterson* v. *John J. Reilly, Inc.,* 105 N.H. 340, 200 A.2d 21, 27 (1964). Absent such a showing, its claim to the escrowed funds as against plaintiff Bloom must necessarily fail. This conclusion renders any further inquiry into the issue of notice unnecessary.

*Judgment affirmed.*