In re D. Stephen TITUS (d/b/a Titus Auto Repair), Patricia A. Titus, Debtors.

**Bankruptcy No. 80–00176.**

United States Bankruptcy Court, D. Vermont.

Sept. 23, 1980.

Gary Randall Brown, Woodstock, Vt., for Vermont Nat. Bank.

Jerome I. Meyers, Springfield, Vt., for D. Stephen Titus and Patricia A. Titus.

Alan R. Medor, Rutland, Vt., trustee.

CHARLES J. MARRO, Bankruptcy Judge.

## FINDINGS OF FACT, MEMORANDUM AND ORDER

The claim of Vermont National Bank filed as secured in the sum of $10,239.48 on September 3, 1980, came on for hearing as a contested proceeding at the Grand Jury Room, Federal Building, Rutland, after notice, on September 22, 1980.

The hearing was reported by Debbie Taggart of Depositions, Etcetera.

From the testimony adduced at said hearing, the exhibits received and the records in the case, the following Findings of Fact are made and Conclusions reached:

On June 13, 1978, the Debtors executed and delivered to the Vermont National Bank a promissory note in the principal sum of $18,000.00 payable with interest in monthly installments of $170.74 beginning July 25, 1978. This note was secured by real estate upon which was situated the residence of the Debtors and a garage operated by D. Stephen Titus as a commercial business under the name of Titus Auto Repair.

Said real estate was considered by the Debtors as their residence even though the commercial garage was also thereon situated.

The mortgage which was dated June 13, 1978 was conditioned upon the payment of the aforesaid promissory note for $18,000.00 as well as "all sums of money which are now owing or which may hereafter become due and owing to the mortgagee or to any of the bank's predecessors in title and interest therewith from the said mortgagor on any and all forms of indebtedness according to the tenor and effect thereof; including any and all other notes, debts or liabilities now due or which may hereafter become due from the said mortgagor (or any or all of them if more than one, including any subsequent and new obligation of any or all of said mortgagors to said bank which is hereby specifically consented to) to the said VERMONT NATIONAL BANK, however specified, and whether direct or indirect, . . ."

The commercial garage was burned down and in order to pay off the cost of reconstruction, the Debtors made application to the bank for a loan which they wished to have added as part of the indebtedness under the real estate mortgage, but the bank denied this application. In lieu thereof, the bank approved an installment loan with a note executed and delivered by the Debtors to the bank dated December 3, 1979 in the sum of $11,377.20 payable in monthly installments of $189.62 beginning January 15, 1980. This note included the paying off of a prior indebtedness of $5,200.00, new money of $2,500.00, finance charges of $3,766.76, life insurance of $208.20, disability insurance of $390.24, and recording fees of $12.00.

As security for the payment of said note, the Debtors executed and delivered to the bank a security agreement on furniture, fixtures, machinery and equipment, as well as other personal property with financing statements filed in the Town of Reading and with the Secretary of State.

At the time of the closing of the loan evidenced by the aforesaid promissory note, the Debtors understood and intended that the only security for payment was the personal property described in the security agreement.

The loan application signed by the debtor, D. Stephen Titus, and dated December 3, 1979 carried on the back thereof the following notation: "The Titus's are requesting loan of 2500.00 to pay for lumber bill for construction of barn for business. They

would like to pick up balance of existing I/L and get 2500.00 more. Bob and I can see no problem in going 60 months on this with an interest rate of 17%. We will take all furniture, fixtures, equipment and right of rescission of property."

In addition, the Debtors on the same date signed and delivered to the bank a "Notice of Right of Rescission" which indicated that the transaction of December 3, 1979 "may result in a lien, mortgage, or other security interest on your home." These notices were signed by the Debtors. They were not read by the debtor, D. Stephen Titus, but they were read by his wife, and her understanding was that they gave them the right to cancel the transaction.

The $5,200.00 which was paid off from the proceeds of the loan on December 3, 1979, represented the balance due on a prior loan which the bank made to the Debtors on August 20, 1979, $3,000.00 of which was to be used for the construction of a garage.

Prior to the closing of this loan, the Debtors had requested that the amount borrowed be added to the indebtedness secured by the real estate mortgage, but this application was denied.

As security for this loan, the Debtors executed and delivered to the bank a security agreement covering a used Chevrolet truck. The rate of interest for this loan was 13.38%. The bank was familiar with the limit of 12% interest on loans for residences prescribed under Vermont Law.

In connection with the loan of August 20, 1979, the Debtors executed and delivered a "Notice of Right of Rescission" which stated that the transaction of August 20, 1979 might result in a lien, mortgage, or other security interest on their home. These notices were not read by the debtor, D. Stephen Titus, but they were read by his wife, but her understanding was that they gave them the right to cancel the transactions.

The rates of interest charged by the bank on the loans of December 3, 1979 and August 20, 1979, were 17% and 13.38%, respectively, and both were in excess of the 12% limit which could be charged on those debts

or notes secured by a residence of the Debtors.

There was no intention on the part of the parties to secure payment of the notes of August 20, 1979 and December 3, 1979 under the "future indebtedness clause" in the original real estate mortgage dated June 13, 1978 securing payment of the principal sum of $18,000.00.

MEMORANDUM AND CONCLUSIONS

The only witnesses at the hearing were Robert A. Baran, assistant vice president and manager of the Springfield office of the Vermont National Bank, and the Debtors.

The testimony as to whether the loans of August 20, 1979 and of December 3, 1979 were to be added to the real estate mortgage under the future indebtedness clause was conflicting.

The Debtors testified that it was their first intention that they borrow the money with the real estate pledged as security, but the bank disapproved the application. This was not denied by the bank's witness.

The Debtors were emphatic in their testimony that the only security for the loan of December 3, 1979 was the furniture, fixtures, machinery and equipment used in the garage and other personal property. It is true that they executed the Notices of Right of Rescission which spelled out a possible lien or mortgage on their residence. However, the debtor, D. Stephen Titus, did not read the notices and his wife read them but interpreted them as meaning they could merely rescind the transaction. Their testimony in this regard is credible.

On the other hand, the bank did have them execute the Notices of Right of Rescission but it would appear that this was done in the exercise of a superabundance of caution so that the bank could attempt at a later date in the event that the loans went sour to add the amount due under the future indebtedness clause in the mortgage.

The testimony bears out the conclusion that there was no definite understanding that the loans were to be secured

by the real estate. Had the bank been serious in this respect, it would have taken the necessary precaution to fix the rate of interest at 12%, which was the limit prescribed by State Law.

The Debtors were entitled to this interest limit as well as a definite explanation by the bank that the indebtedness was to be secured by the residence. The only reasonable conclusion is that there was no such intention.

In support of its position the bank cited *Bloom v. First Vermont Bank and Trust Company*, 133 Vt. 407, 340 A.2d 78. This case holds that a mortgagee under a mortgage also covering future debts due the mortgagee must, to obtain a secured position under the mortgage as to future debts, show that the parties intended the subsequent debt to be secured by the mortgage. The burden is definitely on the mortgagee, in this case the bank.

In *Bloom* the Court pointed out that the bank "simply failed to sustain its burden of establishing that the money advanced after the mortgage was executed was intended by the parties to be secured thereby." In the instant case the facts bear out the same conclusion. Hence Bloom more appropriately favors the Debtors.

The mortgage provision as to future debts has been labelled as a "dragnet" clause. Where such exists it may be worded broadly to cover all other debts in addition to the one specifically secured and it will be construed to cover another debt although such other debt is secured by another mortgage. However, independent loans, as in the instant case, secured by different security have been held not covered by the mortgage in question under the construction placed on the "dragnet" clause in some mortgages. 55 Am.Jur.2d 286, Sec. 145.

The Debtors have admitted that the note of December 3, 1979 is secured by the equipment and personal property.

### ORDER

Upon all of the foregoing,

IT IS ORDERED as follows:

1. The claim of the Vermont National Bank in the sum of $10,239.48 is not secured by the real estate mortgage of June 13, 1978.

2. Its claim is secured by the value of the equipment and other personal property which value if not agreed upon by the parties followed by a written stipulation shall be determined by the Court at a later hearing.

3. The balance of the claim not secured by equipment and personal property shall be allowed as unsecured.