**CANAL NATIONAL BANK**

v.

**Ralph BECKER and Sylvia Becker and First Federal Savings & Loan Association of Bath and Casco Bank & Trust Company.**

Supreme Judicial Court of Maine.

Argued March 6, 1981.

Decided July 3, 1981.

---

Jensen, Baird, Gardner & Henry, Michael A. Nelson (orally), Donald Kopp, Portland, for plaintiff.

Fitzgerald, Donovan, Conley & Day, Mark L. Haley, Constance P. O'Neil (orally), Bath, for Becker.

Thompson, Willard & McNaboe, James P. Lansing, Portland, for Casco Bank.

Roger Theriault, Bath, for First Federal.

Before McKUSICK, C. J., and WERNICK, GODFREY, GLASSMAN,* and CARTER, JJ.

CARTER, Justice.

■ The Superior Court (Sagadahoc County) granted partial summary judgment to Canal National Bank (Canal) against Ralph and Sylvia Becker, ordering foreclosure of Canal's mortgage and sale of part of the real estate covered by the mortgage.[1] Final judgment was entered pursuant to M.R.Civ.P. 54(b).[2] Because we find that there are genuine issues of material fact in dispute, we vacate the judgment and remand to the Superior Court for further proceedings.

In 1972 Ralph and Sylvia Becker executed a written guaranty agreement with Canal obligating them to jointly and severally guarantee all obligations, either then due or thereafter arising, of their corporation, Robinhood Marina, Inc., arising to Canal. The guaranty states that "[u]pon any . . . default [of Robinhood Marina, Inc.] in payment of any . . . obligation, [Ralph and Sylvia Becker] will pay to [Canal] the amount thereof forthwith . . . ."

On May 7, 1976, Sylvia Becker executed individually a mortgage deed to Canal on land and buildings owned by her as security on a $144,451.46 loan from Canal. The mortgage deed is a standard form deed, containing a future advances clause (also known as a "dragnet" clause) providing that the deed shall be void upon payment of $144,451.46, all prior debts, and "all future advances made at the option of Grantee

---

* Glassman, J., sat at oral argument and participated in the initial conference, but died before the opinion was adopted.

1. Canal's mortgage deed on its face includes two parcels of land, including the Becker's private residence. The trial court found a genuine issue of fact as to whether the private residence was intended by the parties to be included in the mortgage deed. It therefore did not enter summary judgment ordering foreclosure with respect to the residential property.

First Federal Savings & Loan Association of Bath and Casco Bank & Trust Company also hold mortgages over part or all of the Becker's property here in question. Thus, they are "parties in interest," and Canal properly proceeded against them in this action. 14 M.R.S.A. § 6321 (1980).

2. The trial court directed that final judgment be entered at once, explaining merely that there was "no just reason for delay." We have recently emphasized that Rule 54(b) "is not intended to dilute the force of the fundamental rule against splitting a cause of action and the piecemeal performance of the appellate function." *Durgin v. Robertson*, Me., 428 A.2d 65, 68 (1981). The trial court must balance judicial administrative interests against the potential danger of denying justice by delay. *Id.* In order for us to be able to effectively review the trial court's decision, it is essential that the trial court clearly articulate the factors it considered and its reasons for granting Rule 54(b) certification. We therefore incorporate as a requirement for future Rule 54(b) certifications that the trial court briefly state its reasons for granting the certificate unless the justification is clearly apparent. *See Allis-Chalmers Corp. v. Philadelphia Electric Co.*, 521 F.2d 360, 364 (3d Cir. 1975).

... to the Grantor(s) hereof ... all of which debts, obligations and advances may be evidenced by notes, credits, open accounts, overdrafts, endorsements, *guaranties* and any form of indebtedness, direct of indirect, written or oral, up to ... a total amount ... of" $250,000.[3] (emphasis added).

On July 25, 1977, Robinhood Marina, Inc. (by Sylvia Becker) executed a promissory note for $53,289.00 to Canal. On its face, the note states that it is secured by a "chattel mortgage or a security agreement, dated, July 25, 1977." No such mortgage or agreement appears in the record.

In June 1978, Robinhood Marina (by Ralph Becker) executed two promissory notes to Canal: the first for $12,000 and the second for $35,000. Each note on its face states that it is secured by a real estate mortgage dated May 7, 1976.

In its complaint, Canal alleges that in November 1979, "in accordance with the terms of the Notes and the Guaranty," Canal made demand upon the Beckers for payment in full of the three promissory notes. The Beckers' Answer denied "that demand was made in accordance with the terms of the Notes and Guaranty," but admits that to the extent demand was made, the Beckers have refused to meet the demand. No demand was made for the $144,451.46 loaned to Sylvia Becker as consideration for the 1976 mortgage, and the record is silent as to the status of that loan.

In February 1980, Canal brought this action for foreclosure of the mortgage.

In support of its motion for summary judgment, Canal submitted an affidavit alleging that the Beckers executed the May 7, 1976 mortgage "[t]o secure the Notes and the Guaranty, ...." Ralph Becker's affidavit in opposition to the motion alleged that (1) the sole purpose of the 1976 mortgage was to finance boats to be "floor planned" in inventory by Robinhood Marina, Inc. then or at a later time; (2) no mention was ever made of the June 1978 notes being secured by the mortgage; and (3) the references on the faces of the June 1978 notes to the May 7, 1976 mortgage were inserted *after* Becker executed the documents without his knowledge or consent.

The Superior Court held, as a matter of law, that the language of the May 7, 1976 mortgage encompasses the July 1977 promissory note and the two June 1978 notes. We disagree.

■ Canal argues in support of the decision below that extrinsic evidence may not be admitted to vary the unambiguous terms of a mortgage deed. A future advances clause such as the one here in question is, however, by its very nature, ambiguous. Where the mortgagee is under no obligation to make future advances, as here, a mortgage, purporting to secure future advances, cannot secure such advances until they are actually made. "*At most,* those provisions represent an offer by the mortgagor to provide the security of the mortgage for such advances if and when they are made." *Second National Bank of Warren v. Boyle,* 155 Ohio St. 482, 486, 99 N.E.2d 474, 476 (1951) (emphasis added). If such offer is accepted by the mortgagee in making a subsequent advance, then the subsequent advance is secured by the original mortgage. This always necessarily raises the question of the parties' intent at the time of the making of the subsequent advance. *See Bloom v. First Vermont Bank and Trust Co.,* 133 Vt. 407, 409, 340 A.2d 78, 80 (1975). Since the trial court must look to the parties' intentions both at the time of the mortgage and at the time of the subsequent advance, the court cannot rely solely on the language of the dragnet clause—it must look to extrinsic evidence.[4]

---

**3.** An open-end mortgage to a financial institution is authorized by 9–B M.R.S.A. § 436 (1980).

**4.** This is consistent with our decision in *Bunker v. Barron,* 93 Me. 87, 44 A. 372 (1899). There, a mortgage on a farm also provided security for

"all other debts which the ... Quints shall contract with ... Paine." Later, the Quints purchased a wood lot, borrowing $225 from

■ Furthermore, while a dragnet clause in a mortgage can properly serve purposes of commercial convenience,[5] it may also be a trap for the unwary. A dragnet clause often, as in the instant case, is included in standard mortgage forms drafted by the mortgagee. The mortgagor may well be unaware of either its presence, or its implications. *See First Security Bank of Utah v. Shiew*, 609 P.2d 952, 954 (Utah 1980). Mortgages containing future advances clauses "have been denominated 'Anaconda mortgages' and are well named thus, as by their broad and general terms they enwrap the unsuspecting debtor in the folds of indebtedness embraced and secured in the mortgage which he did not contemplate . . . ." *Berger v. Fuller*, 180 Ark. 372, 377, 21 S.W.2d 419, 421 (1929). A literal interpretation of the clause would allow the bank to turn to the real estate subject to the mortgage any time the mortgagor falls behind on a personal loan, misses a payment on an automobile loan, or overdraws his checking account at the bank. *Wong v. Beneficial Savings and Loan Association*, 56 Cal.App.3d 286, 292, 128 Cal.Rptr. 338, 342 (1976). Therefore, a dragnet mortgage "is not a favorite of the law and is subject to interpretation and construction." *Emporia State Bank*, 214 Kan. at 180, 519 P.2d at 621; *see Freese Leasing, Inc. v. Union Trust and Savings Bank*, 253 N.W.2d 921, 925 (Iowa 1977); *First Security Bank of Utah*, 609 P.2d at 955. Since application of dragnet clauses in mortgages in accordance with their literal terms might often work forfeitures upon unsuspecting mortgagors, we hold that the language of a dragnet clause alone is not conclusive of the parties' intent where it is claimed that the clause covers loans made subsequent to the loan initially secured by the mortgage containing the dragnet clause. *See Freese Leasing*, 253 N.W.2d at 926; *Emporia State Bank*, 214 Kan. at 183, 519 P.2d at 623.

We find further support for this conclusion in *Gosselin v. Better Homes, Inc.*, Me., 256 A.2d 629 (1969). There, in holding that parol evidence is admissible to show that a mortgage, absolute on its face, was in fact intended to secure advances, we stated:

> [e]vidence of the circumstances surrounding the execution of the mortgage, the foreclosure of which the defendant seeks to enforce, together with the conduct and contemporaneous oral agreement of the parties, were all receivable in evidence for the purpose of proving the *real nature of the transaction*.

*Id.* at 638 (emphasis added).

In the instant case, part of the consideration Canal alleges that it received for its $144,451.46 loan to Sylvia Becker was an unconditional agreement that any future advance made directly or indirectly by Canal to Sylvia Becker would be secured by the real estate described in the mortgage. Also, part of the consideration Canal alleges that it received for each of its three subsequent loans to Robinhood Marina, Inc. was a security interest in the mortgage real estate. The defendants, however, allege that in fact the mortgage was intended solely to secure advances for present and future inventory purchases. Since it is the

---

Paine, and giving Paine a warranty deed of the lot as security. In holding that the farm mortgage did extend to the $225 loan, the Court did not rely solely on the language of the future advances clause. Rather, it looked to extrinsic evidence to see if the two transactions were independent or related. Noting that the wood lot was intended to supply the farm, and that it was located near to or adjoining the farm, the Court concluded that the transactions were not independent. The Court acknowledged that the separate security provided for the $225 loan weighed against its determination, but stated that that factor could not be conclusive. *Id.* at 94, 44 A. 372.

5. A dragnet clause in a mortgage can be a practical, useful tool for facilitating commercial operations involving frequent advancements of funds. The mortgagor saves interest on the future advances until he is ready to use them. The parties also avoid the expense and inconvenience of refinancing the mortgage, or of securing later mortgages for each advance. *See Emporia State Bank and Trust Co. v. Mounkes*, 214 Kan. 178, 179, 519 P.2d 618, 620 (1974); *Capocasa v. First National Bank of Stevens Point*, 36 Wis.2d 714, 719, 154 N.W.2d 271, 273 n. 1 (1967).

"real nature of the transaction" which is at issue, extrinsic evidence is admissible.[6]

We adopt the rule set forth in *Emporia State Bank*, 214 Kan. at 184, 519 P.2d at 623:

> [I]n the absence of clear, supportive evidence of a contrary intention a mortgage containing a dragnet type clause will not be extended to cover future advances unless the advances are of the same kind and quality or relate to the same transaction or series of transactions as the principal obligation secured or unless the document evidencing the subsequent advance refers to the mortgage as providing security therefor.

*See Freese Leasing*, 253 N.W.2d at 927. The burden is on the proponent to show that both parties intended the later loans to be included within the dragnet clause. *Wong*, 56 Cal.App.3d at 293, 128 Cal.Rptr. at 343; *see Bloom v. First Vermont Bank and Trust Co.*, 133 Vt. 407, 409, 340 A.2d 78, 80 (1975); *Capocasa*, 36 Wis.2d at 719, 154 N.W.2d at 274.

In the instant case, genuine issues of material fact exist. According to the terms of the 1972 guaranty, Sylvia Becker becomes liable for the obligations of Robinhood Marina, Inc. *upon Robinhood's default.* While Canal alleges that it demanded payment from Sylvia Becker for the promissory notes (upon which Robinhood was principally liable) in accordance with the terms of the guaranty (*i. e.,* after Robinhood had defaulted on the notes), that allegation is denied in the Beckers' Answer. Thus, there is an issue as to whether Robinhood Marina, Inc. was in default on the notes at the time demand was made upon the Beckers for payment.

In addition, Ralph Becker's affidavit asserts that the references on the June 1978 notes to the May 7, 1976 mortgage were inserted without his knowledge or consent after he executed the documents. Becker further states that the purpose of the original mortgage was to finance boats to be floor planned in inventory by Robinhood Marina, Inc. The reason for the loans underlying two of the later notes is not revealed in the record; the $35,000 note appears to concern bonding for an unrelated law suit involving Robinhood Marina, Inc. Whether these notes are of the same kind, or relate to the same transaction as the original mortgage, and whether the June 1978 notes referred back to the mortgage at the time they were executed, are unresolved issues on this record. The Superior Court should also consider, in ascertaining the parties' intentions, that the mortgage appears to be on a standard form prepared by Canal, and that the July 1977 note is apparently secured by a separate chattel mortgage indicating that Canal may not have been relying upon the May 7, 1976 mortgage in extending that loan.

The entry is:

Judgment vacated.

Remanded to Superior Court for further proceedings consistent with the opinion herein.

*All concurring.*

---

**6.** We distinguish *Century Homes, Inc. v. Plaisted*, Me., 412 A.2d 389 (1980). There extrinsic evidence was not permitted to prove that the parties intended the total contract price for construction of a house to be $45,846 *plus sales tax*, where the contract recited that the total sum to be paid was $45,846. Thus, there was no question as to the real nature of the underlying transaction involved; the only issue concerned the price to be paid for the work.