1998 ME 151

**KEY BANK, N.A.**

v.

**Stanley W. MOTT, Jr. et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 8, 1998.

Decided June 17, 1998.

Michael S. Haenn, Bangor, for plaintiff.

George W. Kurr, Jr., Logan, Kurr & Hamilton, Bangor, for defendants.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, DANA, LIPEZ, and SAUFLEY, JJ.

LIPEZ, Justice.

[¶ 1]   Stanley W. Mott, Jr. and Cheryl C. Mott appeal from the judgment entered in the Superior Court (Penobscot County, *Mead, J.*) granting Key Bank, N.A.'s motion for a summary judgment on the Bank's foreclosure action pursuant to 14 M.R.S.A. § 6321–6325 (1980 & Supp.1997). On appeal the Motts argue that the existence of genuine issues of material fact precluded the entry of a summary judgment; and that the court exceeded the bounds of its discretion by failing to rule on their motions to amend their answer before ruling on the Bank's motion for a summary judgment. Because we agree that Cheryl Mott's affidavit raised a genuine issue of material fact, we vacate the judgment.

## I.

[¶ 2] On March 17, 1989, Stanley and Cheryl Mott executed and delivered to Key Bank, N.A. (the Bank) a mortgage deed on real property located in Lincoln. The mortgage deed stated that it covered, *inter alia,* "any other note or notes given by Mortgagor to Mortgagee in renewal or extension" of contemporaneously-incurred debt, and "future advances made by the Mortgagee to the Mortgagor at the option of the parties hereto." The mortgage deed was accompanied by a note, also dated March 17, 1989, in the amount of $224,485 which was executed by Stanley only.

[¶ 3] In September 1990 Stanley executed two promissory notes in the amounts of $100,211 and $130,044, respectively, to the Bank. According to the Bank's commitment letters, which were signed by Stanley, the purpose of both loans was "to refinance Key Bank debt and to bring accounts payable up to date." According to the deposition testimony of the Bank's loan officer, the 1990 notes appeared to have been used in part to "pay off" Stanley's existing indebtedness pursuant to the 1989 note; the remaining funds, which she estimated totaled approximately $68,000, were then disbursed to Stanley. Although neither 1990 note stated on its face that it was secured by the previously-executed mortgage on the Motts' Lincoln property, both commitment letters expressly provided that the notes would be secured by, *inter alia,* "a first mortgage on land and buildings located in Lincoln, Maine, described in [the March 1989 mortgage deed]." In October 1995 Stanley paid off the $100,211 note, leaving only the $130,044 note outstanding.

[¶ 4] In November 1995 the Bank commenced a foreclosure action in the Superior Court pursuant to 14 M.R.S.A. §§ 6321–6325, alleging that Stanley had defaulted on the $130,044 note and that the Motts therefore were in breach of the terms of the mortgage. In their answer, the Motts admitted that the note was in default and that they had executed the mortgage, but denied that the mortgage encompassed the 1990 note. In July 1996 the Bank filed a motion for a summary judgment. The Motts opposed the motion, stating in separate affidavits that, *inter alia,* Cheryl had not signed the 1990 note and that her husband had not told her about his execution of the note; and that at the time Stanley signed the commitment letter for the 1990 note, he understood from his conversations with the Bank's loan officer that the note would be renewed at the end of its term.

[¶ 5] In December 1996 Stanley moved to amend his answer to add what he characterized as the affirmative defense of promissory estoppel and a counterclaim for breach of contract. Cheryl also moved to amend her answer to include the affirmative defense of recoupment and a counterclaim pursuant to the Equal Credit Opportunity Act, 15 U.S.C. § 1691. The court did not rule on these motions. In January 1997 the Superior Court granted the Bank's motion for a summary judgment and issued an order of foreclosure. This appeal followed.

## II.

[¶ 6] The Motts first argue that Stanley's affidavit, which asserted that the Bank's loan officer had promised him that the Bank would renew the 1990 note at the end of its term and that the Bank later reneged on this promise, raised a genuine issue of material fact that precluded a summary judgment in this foreclosure proceeding. *See* M.R. Civ. P. 56(c). The Bank contends, however, that the parol evidence rule bars the admission of such extrinsic evidence to vary the unambiguous terms of the mortgage deed and note. *See Farley Investment Co. v. Webb,* 617 A.2d 1008, 1010 (Me.1992).

[¶ 7] To overcome the parol evidence rule argument, the Motts rely on our decision in *Canal National Bank v. Becker,* 431 A.2d 71 (Me.1981). Their reliance is misplaced. In *Becker,* we observed that when a mortgagee is under no obligation to make future advances, the coverage of a mortgage deed's future advance clause for a subsequent advance depends on the parties' intentions both at the time of the mortgage and at the time of the subsequent advance. *See id.* at 73. Because these intentions cannot be determined solely by reference to the language of

the future advance clause, the trial court must also look to extrinsic evidence bearing on that issue. *See id.* Thus, pursuant to *Becker,* extrinsic evidence on the issue of whether the parties intended the mortgage deed's future advance clause to cover the 1990 note would be admissible.

[¶ 8] Contrary to the Motts' contention, however, *Becker*'s rule permitting consideration of extrinsic evidence does not extend to issues other than the parties' intent with respect to the security for the 1990 note. Stanley's conversation with the Bank's loan officer in which she allegedly promised to renew the loan at the end of its term does not bear upon the parties' intent with respect to the note's security, and does not fall within the ambit of *Becker*'s holding. Accordingly, the court did not err by concluding that Stanley's affidavit failed to raise a genuine issue of material fact.[1]

## III.

[¶ 9] The Motts next argue that the mortgage deed did not secure the 1990 note. In her affidavit opposing the Bank's summary judgment motion, Cheryl asserted that Stanley did not tell her that he had executed the 1990 note and that she did not sign the note. Relying on a provision in the mortgage deed stating that the mortgage covered "future advances *made ... at the option of the parties hereto,*" the Motts contend that the mortgage covered only subsequent advances authorized by all of the parties to the mortgage deed. Thus, they argue, Cheryl's assertion that she had not authorized the 1990 note raised a genuine issue of material fact that precluded the entry of a summary judgment. We agree in part.

[¶ 10] We begin by examining the two pertinent provisions contained in the mortgage deed.[2] First, the mortgage deed stated that it covered "any other note or notes given by Mortgagor[3] to Mortgagee in renewal or extension" of Stanley's 1989 note. Second, the mortgage deed stated that it covered "future advances made by the Mortgagee to the Mortgagor at the option of the parties hereto." Thus, the language on which the Motts rely (namely, "at the option of the

1. The Motts also contend that the Bank did not provide sufficient detail as to how the proceeds from the sale of certain personal property collateral were applied to their outstanding loan balance, and that they were deprived of the ability to refute the Bank's calculations. We disagree. The Bank submitted an affidavit to the court which stated that the proceeds were applied to the loan "in accordance with the terms of the Note." The note expressly provides how proceeds are to be applied to the loan: "Each payment received on this note shall be applied first to unpaid late charges (if any), then to interest billed, and then the balance, if any, to principal." This description of the manner in which payments are applied to a mortgagor's indebtedness enabled the Motts to verify the Bank's calculations.

2. The pertinent provisions are contained in the following paragraph of the mortgage deed, set forth in its entirety:

Provided nevertheless, that if the said Mortgagors, their Heirs, Executors, Administrators, or Assigns, shall pay to said Grantee, or its Assigns, the sum of One Hundred Twenty Four Thousand, Four Hundred Eighty Five Dollars and Eighty Seven Cents in accordance with the terms of a certain promissory note of even date given by Mortgagor to Mortgagee or in accordance with the terms of a note or notes executed pursuant to a line of credit agreement or letter of credit agreement dated March 17,

1989 given by Mortgagor to Mortgagee *and shall pay at maturity any other note or notes given by Mortgagor to Mortgagee in renewal or extension of said debt,* and shall pay all other existing debts and obligations of the Mortgagor to the Mortgagee, future advances made by the Mortgagee to the Mortgagor to protect the security hereof, *and future advances made by the Mortgagee to the Mortgagor at the option of the parties hereto,* up to a total of $224,485.87 and shall also keep and perform all the covenants and agreements herein contained and shall not make or suffer any strip or waste on said mortgaged premises, and shall repay to Mortgagee all expenses, if any are incurred, of foreclosure of this mortgage, together with reasonable attorney's fees, then this Deed, as also a certain promissory note or notes as aforesaid given by the said Mortgagor to the said Grantee, to pay the said sum and interest at the time aforesaid shall be void; otherwise shall remain in full force.
(emphasis added).

3. Although the mortgage does not expressly define the word "Mortgagor," the mortgage does provide a contextual definition by stating that the 1989 loan was given "by Mortgagor to Mortgagee." *See supra* note 2. Stanley alone executed the 1989 note. Thus, by inference, the word "Mortgagor" refers to Stanley. The parties do not dispute this inference.

parties hereto") appears only in the future advance clause, and does not appear in the renewal and extension clause. The record reflects that the funds borrowed pursuant to the 1990 note represented both an advancement of new funds to Stanley and a "refinancing" of Stanley's existing 1989 indebtedness.[4]

[¶ 11] To the extent that the 1990 note involved a "renewal or extension" of the 1989 note, rather than an advancement of new funds to Stanley, Cheryl's authorization was unnecessary. Accordingly, Cheryl's alleged lack of consent to any renewal or extension of the original note did not create a genuine issue of material fact with respect to the foreclosure proceeding.

[¶ 12] To the extent that the 1990 note represented an advancement of new funds to Stanley, and therefore implicated the mortgage's future advance clause, Cheryl's argument is persuasive. Future advance clauses are recognized in Maine, see 9–B M.R.S.A. § 436 (1997),[5] and can properly serve purposes of commercial convenience. Nonetheless, we have previously observed that a future advance clause, which is often included in standard mortgage forms drafted by the mortgagee, may also be a trap for the unwary mortgagor who is either unaware of its presence or of its implications. *See Becker,* 431 A.2d at 74. The dragnet clause therefore "is not a favorite of the law and is subject to interpretation and construction." *Id.* (quoting *Emporia State Bank and Trust Co. v. Mounkes,* 214 Kan. 178, 519 P.2d 618, 620 (1974)); *see Decorah State Bank v. Zidlicky,* 426 N.W.2d 388, 390 (Iowa 1988) (dragnet clauses are strictly construed against the mortgagee).

[¶ 13] As noted previously, the mortgage deed in this case provided that it covered "future advances made by the Mortgagee to the Mortgagor *at the option of the parties hereto."* [6] Although we find no precedent involving the proper construction of this phrase in the context of a future advance clause, the guiding principle in the construction of a dragnet clause in a mortgage deed is the determination of the intention of the parties. *See Merchants Nat'l Bank & Trust Co. v. H.L.C. Enterprises, Inc.,* 441 N.E.2d 509, 513 (Ind.App.1982). The phrase "future advances made by the Mortgagee to the Mortgagor at the option of the parties hereto" refers to *the parties to the mortgage deed.* It is undisputed that the parties to the mortgage deed were Stanley Mott, Cheryl Mott, and the Bank. If Cheryl, as a party to the mortgage deed, did not authorize the 1990 note, the advancement of new funds to Stanley could not have been made "at her option."

[¶ 14] The inclusion of the words "at the option of the parties hereto" in the future advance clause of the mortgage deed reflects

---

4. The exact nature of the "refinancing" is not clear from record. The commitment letter in connection with the 1990 note stated simply that one of the note's purposes was "to refinance Key Bank debt." Furthermore, the Bank's loan officer testified that the 1990 note was used in part to "pay off" the 1989 note. The issue of whether this "refinancing" or "pay off" constituted a "renewal or extension," within the meaning of the mortgage deed, has not been raised or briefed by the parties. Accordingly, we express no opinion on this matter.

5. Open-end mortgages are authorized pursuant to 9–B M.R.S.A. § 436, which provides in pertinent part:

> *1. Authorization; requirements. Any interest in real property which may be mortgaged to a financial institution authorized to do business in this State may be mortgaged to secure existing debts or obligations, to secure debts or obligations created simultaneously with the execution of the mortgage, to secure future advances necessary to protect the security and to secure future advances to be made at the option of the parties up to a total amount stated in the mortgage; ...*
>
> *2. Future advances. "Future advances" referred to in subsection 1 shall include only those made to recipients designated in the mortgage.*

9–B M.R.S.A. § 436 (1997); *see also* 33 M.R.S.A. § 505 (Pamph.1997) (applies to mortgages recorded on or after January 1, 1994).

6. The Bank's use of the phrase "at the option of the parties hereto" in its mortgage deed's standard future advance clause was likely an effort to track the language of 9–B M.R.S.A. § 436 (authorizing mortgages to secure "future advances to be made at the option of the parties"). "The parties" to the mortgage deed in this case happen to include an individual who was not a maker on the subsequent notes. We see nothing in the language of the statute that precludes the use of a future advance clause in this fashion.

an intention to protect the interests of each of the parties to the mortgage, and entitled Cheryl, as a party to the mortgage, to avoid further encumbering the Lincoln property by declining to authorize new loans to Stanley not otherwise anticipated by the mortgage deed. We conclude, therefore, that Cheryl's affidavit, in which she asserted that Stanley had not told her of his execution of the 1990 note and that she had not signed the note, raised genuine issues of material fact that precluded the entry of a summary judgment.[7] Accordingly, the court erred by entering a summary judgment in favor of the Bank.

### IV.

[¶ 15] The Motts next argue that the court exceeded the bounds of its discretion by failing to rule on their pending Rule 15(a) motions to amend their answer before ruling on the Bank's motion for a summary judgment. We have previously observed that "when faced with both a motion for a summary judgment and a Rule 15(a) motion to amend pleadings, considerations of finality and judicial economy suggest that a court should dispose of the pending Rule 15(a) motion prior to entertaining a summary judgment." *Kelly v. Michaud's Ins. Agency, Inc.*, 651 A.2d 345, 346 (Me.1994) (holding that court exceeded the bounds of its discretion by ruling on the plaintiffs' motion to amend after ruling on the defendant's motion for a summary judgment). The court in this case, however, issued no ruling on the Motts' pending motions to amend. Thus, given our disposition of this appeal, the Motts' motions remain pending and should be addressed by the court as part of its further proceedings.

The entry is:

Judgment vacated.

---

7. In addition, issues of material fact exist concerning how much of the 1990 note represented a "renewal or extension" of the 1989 note, and how much of the 1990 note represented an advancement of new funds to Stanley.