In the Matter of QUEST INCORPORAT-
ED OF VIRGINIA, Bankrupt.

Gordon P. PEYTON, Trustee, Plaintiff,

v.

FIRST AMERICAN BANK,
N.A., Defendant.

Bankruptcy No. 79–71–A.

Complaint No. 2.

United States Bankruptcy Court,
E. D. Virginia,
Alexandria Division.

Feb. 3, 1982.

Herbert L. Karp, Alexandria, Va., for bankrupt.

Gordon P. Peyton, Alexandria, Va., trustee in bankruptcy.

Robert O. Tyler, Alexandria, Va., for plaintiff/trustee.

Richard A. Cooter, Alexandria, Va., Raymond S. Sczudlo, Washington, D.C., for defendant.

## MEMORANDUM OPINION

MARTIN V. B. BOSTETTER, Jr., Bankruptcy Judge.

The plaintiff trustee and the defendant, First American Bank, N.A. ("Bank"), appear on cross filings of motions for summary judgment. At issue is whether the Bank's application to preexisting debts of substantially all the proceeds of a $150,-000.00 loan of the Bank to the bankrupt, Quest Incorporated of Virginia ("Quest"), effected a preferential transfer under Section 60 of the Bankruptcy Act of 1898 (11 U.S.C. § 96 (Bankruptcy Act of 1898, repealed).)

The relevant facts to which the parties have stipulated are as follows: In September 1978, as a result of an ongoing relationship with the Bank, Quest was indebted to the Bank in the amount of $62,786.67 on an outstanding Promissory Note. Later that month, Quest, in conjunction with the Bank, applied to the Small Business Administration ("SBA") for approval of a $150,000.00 loan under the SBA's Loan Guaranty Program. The application stated that $62,-796.67 of the $150,000.00 loan would be used to repay the prior note to the Bank. While awaiting approval of the guarantee from the SBA, the Bank requested authorization from the SBA to provide Quest with an interim loan of $55,000.00 to reduce pay-

ables. In seeking approval of the interim loan, the Bank stated that consummation of the interim loan would raise the authorized disbursement to it at closing of the guaranteed loan from $62,796.67 to $117,796.67. The SBA approved both the interim loan and a guarantee of eighty percent (80%) of the total loan and, on December 7, 1978, Quest executed a Promissory Note to the Bank in the amount of $150,000.00.

The Bank had held a perfected security interest in inventory of Quest since January 1977. The December 7, 1978 note was secured additionally by a perfected security interest to the Bank in all of Quest's furniture, fixtures, machinery and equipment, titled motor vehicles, accounts receivable, and contract rights, including all proceeds thereof. This note was secured further by the personal guarantees of Quest's principal stockholders, by a Deed of Trust on the stockholders' personal residence and by assignment of a life insurance policy. In disbursing the proceeds of the $150,000.00 loan made by the Bank and guaranteed by the SBA on December 7, 1978, the Bank retained $117,796.67 to repay the principal due on the two earlier loans. Of the remaining proceeds, the Bank also kept $5,297.96 to repay interest due on the earlier loans and, in addition, retained the sum of $20,015.60 to cure overdrafts on Quest's checking account. Thus, of the total loan proceeds of $150,000.00, the sum of $143,-110.23 was used by the Bank to pay off existing indebtedness of Quest.

In January 1979, the following month, the Bank notified Quest and the SBA that the $150,000.00 loan was in default. Later that same month Quest was adjudicated a voluntary bankrupt. Several trade creditors had liens superior to the Bank's security interests, and liquidation of Quest's inventory thus realized for the Bank only

$12,740.41. The remaining amount due under the note, $137,259.59, was never paid by Quest. The SBA honored its guarantee, however, and purchased the note from the Bank for $103,500.00.

The plaintiff trustee asserts that on December 7, 1978 the bankrupt, Quest, transferred to the defendant Bank the sum of $143,110.23 on account of antecedent debts, and that this transfer of property constituted a preference under Section 60(a) of the Bankruptcy Act of 1898. The trustee argues further that this transfer is avoidable by the trustee under Section 60(b) of the Bankruptcy Act upon a showing that it enabled the Bank to obtain payment of a greater percentage of its debt than some other creditor of the same class and was made when the Bank knew or should have known of the bankrupt's insolvent condition. The defendant Bank contends that the transaction between itself and Quest did not create a voidable preference because disbursement of loan proceeds to the Bank did not result in depletion of the bankrupt Quest's estate to the detriment of other creditors. The Bank also argues that it did not have reasonable cause to believe that Quest was insolvent in December 1978 when the loan was made [1].

This case is controlled by the Bankruptcy Act of 1898 because Quest filed its petition on January 30, 1979. The Act defined a preference as an act of the debtor: (1) making or suffering a transfer of his property, (2) to or for the benefit of a creditor, (3) for or on account of an antecedent debt (resulting in a depletion of the estate), (4) while insolvent, (5) within four months of bankruptcy, (6) effect of which is to enable the creditor to obtain a greater percentage of his debt than some other creditor of the same class.[2] For a transaction to be a

---

[1]. The defendant Bank bases this argument upon the definition of "insolvency" found in the Bankruptcy Act. Section 1(19) of the Act defines insolvency as the state of having liabilities in excess of assets, rather than simply the inability to meet current obligations. (11 U.S.C. § 1(19) (Bankruptcy Act of 1898, repealed).)

[2]. Section 60 of the Bankruptcy Act reads, in pertinent part:

a. (1) A preference is a transfer, as defined in this Act, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a pro-

preference under the Act, all six elements must be present. The absence of any one will render the transfer non-preferential for bankruptcy purposes, and the burden of proof to establish all elements lies with the trustee. (3 *Collier on Bankruptcy* (14th ed.), ¶ 60.02, p. 759–760.) Even when all six elements are present, however, the trustee may avoid the payment and recover the property for the estate only upon proof of an additional element, under Section 60(b), that the creditor receiving or to be benefitted by the preference had reasonable cause to believe that the debtor was insolvent when the transfer took place. (11 U.S.C. § 96(b) (Bankruptcy Act of 1898, repealed).)

The Bank argues that the transaction cannot be avoided because at least two essential elements are missing: depletion of the estate, and a showing that the Bank had reasonable cause to believe that Quest was insolvent in December 1978.

■ What the Act forbids is "the appropriation by the insolvent debtor of a portion of *his property* to the payment of a creditor's claim, so that thereby the estate is depleted." *National Bank of Newport v. National Herkimer County Bank*, 225 U.S. 178, 32 S.Ct. 633, 56 L.Ed.2d 1042 (1912), at 184 (emphasis added). Here the bankrupt "paid off" $143,110.23 of accumulated antecedent debt to the Bank in December 1978. The funds used to accomplish this payment, however, were proceeds of a larger loan. The form of the transaction suggests a transfer of $143,110.23 from Quest to the Bank, but the substance of it left the bankrupt indebted to the Bank for $150,000.00 on the SBA-guaranteed loan, or $6,889.77 more than it had owed before. When a debtor merely renews an old obligation or substitutes a new loan for a prior one, no property of the debtor can be said to change hands. *See Doughty v. Nassau Factors Corporation*, 56 F.2d 862 (E.D.N.Y. 1932); *Johnson v. Fulton National Bank*, 201 Ga. 341, 39 S.E.2d 754 (1946).

■ If the debtor parts with no property of his own, the estate cannot be depleted, because nothing is removed from it. Payment of an antecedent debt with funds obtained from a new loan (which brings nothing into the estate) cannot take anything away from or deplete the debtor's estate. The debt is paid but not with the bankrupt's property. In such circumstances, the creditor cannot be charged with receiving a preference. *See In re Zaferis Bros. & Co.*, 67 F.2d 140 (9th Cir. 1933).

In *National Bank of Newport v. National Herkimer County Bank, supra*, a bankrupt corporation gave its note to a related (sister) corporation, which then discounted the note to the defendant bank. Subsequently, the creditor corporation paid the note and credited the amount to itself in the records of its debtor-creditor transactions with the bankrupt. When the bankrupt's trustee sought to recover the payment to the defendant bank, the Supreme Court held that no preference to the bank had resulted from the transaction because the creditor corporation had acted on its own behalf in paying the note. *See National Bank of Newport v. National Bank of Herkimer, County, supra*, 225 U.S. at 185, 32 S.Ct. at 635. There was no evidence to indicate that the payment was made even indirectly by the bankrupt or that the bank was aware of the charge of the sum paid on the note against the amounts owed the bankrupt by the sister corporation. *Id.* at 183.

Here, the SBA occupies a position equivalent to that of the discounter in *National Bank of Newport*. In the instant case, the Bank actually received payment from (1) the sale of Quest's inventory (as to which the Bank had been secured for two years prior to the filing of the petition); and (2) from the SBA under that agency's guarantee commitment[3]. The SBA neither sought

---

ceeding under this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

11 U.S.C. § 96(a)(1) (Bankruptcy Act of 1898 repealed).

**3.** No preference to the Bank arises from the payment by the SBA as guarantor. Payments made by a guarantor do not effect a preference because they do not deplete the bankrupt's estate. 3 *Collier on Bankruptcy* (14th ed.), ¶ 60.26, p. 881. This is so even if the guarantor

nor obtained any security of Quest's in return for this guarantee [4] and, thus, no property of Quest was involved in the SBA's payment to the Bank.

Finally, in determining whether to grant either party's motion for summary judgment, the Court must consider that under Rule 56(c) of the Federal Rules of Civil Procedure, as adopted by Rule 756 of the Rules of Bankruptcy Procedure, summary judgment properly may be granted only when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. The Fourth Circuit, moreover, has strictly interpreted the law governing the use of summary judgment in *Phoenix Savings and Loan, Inc. v. The Aetna Casualty and Surety Company*, 381 F.2d 245 (4th Cir. 1967). This case meets the exacting standards enunciated by the Fourth Circuit and is, therefore, an appropriate one for summary judgment.

The facts as stipulated by the parties demonstrate that no diminution of the bankrupt Quest's estate occurred as a result of the retention by the Bank of $143,110.23 from the December 7, 1978 loan of $150,-000.00. The payment of Quest's antecedent debt to the Bank was a paper transaction which placed no property of Quest's in the Bank's hands. The new loan simply consolidated Quest's indebtedness and provided a small additional cash advance.

Payment of an antecedent debt must deplete the bankrupt's estate before it meets the test of a preference under Section 60(a) of the Bankruptcy Act of 1898. Since the transaction here scrutinized did not produce that result, it lacks an essential element of a preference subject to avoidance and recovery by the trustee.

Because the transaction does not qualify as a preference under Section 60(a) of the Act, we need not reach the issue of whether the Bank had reasonable cause to believe that Quest was insolvent on December 7, 1978.

The motion of the defendant Bank for summary judgment is, therefore granted; the Plaintiff's Motion for Partial Summary Judgment filed by the trustee is denied. The Complaint by Trustee to Avoid Preferential Transfer is dismissed.

---

takes a mortgage or other security interest in the bankrupt's property as consideration for the payment. *First National Bank of Danville v. Phalen*, 62 F.2d 21 (7th Cir. 1932); *In re Zaferis Bros. & Co.*, 67 F.2d 140 (9th Cir. 1933).

4. The additional security interests transferred at the time of the loan went to the Bank, not the SBA as guarantor. Although the taking of this new security might have effected a preference, the Bank never sought to recoup its debt from these assets, and that transfer is not at issue here.