In re George R. EWING, Debtor.

Donald R. CALAIRO, Trustee, Plaintiff,

v.

PITTSBURGH NATIONAL BANK and Coventry Care, Inc., Defendants.

Civ. A. No. 83–2640.
Bankruptcy No. 80–1227.
Adv. No. 82–104.

United States District Court,
W.D. Pennsylvania.

Jan. 18, 1984.

---

Robert O. Lampl, Janice Morison, Pittsburgh, Pa., for trustee, plaintiff.

John M. Feeney, George R. Specter, Harold Gold, Pittsburgh, Pa., for Coventry Care, Inc.

Gary P. Hunt, Pittsburgh, Pa., for Pittsburgh Nat. Bank.

Donald R. Calaiaro, Saldamarco & Calaiaro, Pittsburgh, Pa., for debtor.

## MEMORANDUM OPINION

MANSMANN, District Judge.

The instant matter is before this Court on appeal from an Order of the Bankruptcy Court for the Western District of Pennsylvania, dated September 19, 1983, which denied motions to dismiss the Plaintiff's Complaint made by Coventry Care, Inc. (CCI) and Pittsburgh National Bank (PNB).[1]

After careful consideration of the record before this Court, the briefs filed[2] and oral arguments of counsel, this Court reverses the Order of the Bankruptcy Court and dismisses the Plaintiff's complaint.

\* \* \*

### Factual Background

The facts of this matter were stipulated by the parties before the Bankruptcy Court. Those pertinent to the issues raised by the instant appeal are as follows:

Commencing on or about November 12, 1968, George R. Ewing (the Debtor), borrowed various sums of money from PNB. To secure the debt, the Debtor executed promissory notes and pledge agreements.

On September 30, 1977 the Debtor borrowed $67,000 from PNB and executed a 90-day note and pledge agreement. At this

---

**1.** Also before this Court are two motions: the Trustee's motion to quash the appeal and CCI's motion for withdrawal of reference. With respect to the first motion, the Trustee has asserted that the Order of the Bankruptcy Judge is interlocutory and that since leave to appeal was not requested by CCI, its appeal should be dismissed. However, since the notice of appeal was timely filed, we choose, in the discretion of this Court as permitted under FED.R. BANKR.P. 8003(a)(3), to deny the trustee's motion and to determine the appeal on its merits. With respect to CCI's motion for withdrawal of reference, in light of this opinion, it is denied as moot.

**2.** Although PNB did not appeal from the September 19, 1983 Order, it has filed an *amicus curae* brief with the permission of this Court.

time, the Debtor pledged 75,000 shares of class B common stock and 9500 shares of class A common stock in CCI. Thereafter, the loan was extended for various additional 90-day periods. Further, on or about June 27, 1978, the Debtor executed a promissory note and pledge agreement[3] to secure an additional 90-day extension of the debt.

Following a default in repayment of the debt, PNB noticed and held a closed bid sale to liquidate the stock pursuant to its rights under the June 27, 1978 note.

The sale of the stock was consummated on April 10, 1980 when it was sold to CCI for $72,500.

Thereafter, in August of 1980, the Debtor filed his petition in bankruptcy.[4]

\* \* \*

The issue before this Court is whether the debtor's property was transferred within the meaning of 11 U.S.C. § 548 within one year prior to his filing of the bankruptcy petition. More specifically, this Court is faced with determining whether a "transfer" of the debtor's property, as defined in 11 U.S.C. § 548 took place either in September of 1977 or on June 27, 1978 (the dates the Debtor pledged his securities) or on April 10, 1980 (the date PNB sold the stock).

■ For the reasons set forth below, this Court finds that the "transfer" within the meaning of 11 U.S.C. § 548 took place when the Debtor pledged his shares of CCI to PNB, either in September of 1977 or on June 27, 1978. Since this transpired outside of the one year pre-petition period set forth in 11 U.S.C. § 548(a), this "transfer" is not avoidable pursuant to the Bankruptcy Code, notwithstanding that the actual sale of the

stock by PNB took place on April 10, 1980, less than one year before the Debtor filed his petition in bankruptcy.

\* \* \*

11 U.S.C. § 548 provides that under certain conditions:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition . . .

11 U.S.C. § 548 further provides the definition of "transfer":[5]

(d)(1) For the purposes of this section, a transfer is made when such transfer becomes so far perfected that a bona fide purchaser from the debtor against whom such transfer could have been perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee . . .

■ In order to determine under the Bankruptcy Act when a transfer becomes perfected to the extent that the transferee has rights superior to that of a bona fide purchaser from the transferor, it is necessary to refer to the applicable state law, *Appeal of Copeland,* 531 F.2d 1195 (3d Cir. 1976), which governs the secured interests asserted by the parties in a bankruptcy proceeding, *In the Matter of Bollinger Corp.,* 614 F.2d 924 (3d Cir.1980).

In this connection, Pennsylvania's Uniform Commercial Code sets forth when a security interest is perfected with regard to securities.

13 PA.CONS.STAT.ANN. § 9303(a) (Purdon Supp.1983) provides, in pertinent part:

A security interest is perfected when it has attached and when all of the applica-

---

**3.** It is unclear from the record if new shares of CCI were pledged this date, or if the previously pledged shares were repledged. However, since both dates are outside of the one year period prior to the filing of the petition in bankruptcy, this distinction is irrelevant.

**4.** Initially, the Debtor commenced a voluntary Chapter 11 case, but this was later converted to a Chapter 7 case.

**5.** It is acknowledged that 11 U.S.C. § 101(40) *generally* defines "transfer" as ". . . every mode, direct or indirect, absolute or conditional, voluntary or involuntary, or disposing of or parting with property or with an interest in property, including retention of title as a security interest". However, the *specific* definition of "transfer" set forth in 11 U.S.C. § 548(d)(1) is applicable to § 548 and controls here.

ble steps required for perfection have been taken. . . .

More specifically, 13 PA.CONS.STAT. § 9304(a) (Purdon Supp.1983) sets forth when a security interest is perfected in instruments:[6]

A security interest in . . . instruments . . . can be perfected only by the secured party's taking possession . . .

Therefore, it is quite clear, when applying state law, more particularly, Article 9 of Pennsylvania's Uniform Commercial Code to the instant situation, that the perfection of PNB's security interest in the Debtor's stock certificates took place in either September of 1977 or on June 27, 1978 when the stock was pledged and PNB was given possession of same.

In *Appeal of Copeland,* 531 F.2d 1195 (3d Cir.1976) the U.S. Court of Appeals for the Third Circuit, after applying state law (Article 9 of Delaware's Uniform Commercial Code), held that the creditor's security interest in the debtor's securities was perfected when the stock certificates were pledged (when the escrow agent gained possession of the stock certificates in that case). More recently, when faced with an analogous situation, in *Dean Witter Reynolds, Inc. v. MacQuown,* 717 F.2d 859 (3d Cir.1983) the Court of Appeals held that under Pennsylvania law, for the purposes of the bankruptcy act,[7] a transfer of realty[8] is completed *i.e.,* "is good as against a subsequent bona fide purchaser . . . when the deed is recorded. . . ." *Id.* at 863. Similarly, we find for the purposes of the bankruptcy act, a security interest in securities perfected when the stock certificates are pledged.

In *Lovett v. Shuster,* 633 F.2d 98 (8th Cir.1980), when faced with a strikingly similar factual situation (under § 67(d)(5) of the former Bankruptcy Act (11 U.S.C. § 107(d)(5)), the Court of Appeals for the Eighth Circuit held that the "transfer" for the purpose of that section of the Bankruptcy Code took place when the secured party took possession of the pledged securities because state law provided that this constituted the perfection of the security interest, and not when the foreclosure sale took place (which was held *after* the filing of the petition in bankruptcy).

\*   \*   \*

Therefore, consistent with the above, the "transfer" of the Debtor's properties for the purposes of 11 U.S.C. § 548 transpired when he pledged the stock to PNB, which act perfected its security interest. Since this took place prior to the filing of the bankruptcy petition by more than one year, this Court finds that this "transfer" cannot be avoided. Accordingly, the Order of the Bankruptcy Court is reversed.

An appropriate Order will issue.

---

**6.** "Instrument" is defined in 13 PA.CONS. STAT.ANN. § 9105(a) (Purdon Supp.1983) as "(a) negotiable instrument (defined in § 3104), or a security (defined in § 8102) or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment".

**7.** § 14(c)(4) of the old bankruptcy act was at issue and was analogized to § 67(d)(5) which parallels the current 11 U.S.C. § 548(d)(1).

**8.** This Court would also note that the Bankruptcy Court relied on two Fifth Circuit cases which dealt with the transfer of real property interests (deeds of trust) under the old bankruptcy act, *Abramson v. Lakewood Bank & Trust Co.,* 647 F.2d 547 (5th Cir.1981) and *Durrett v. Washington National Ins. Co.,* 621 F.2d 201 (5th Cir.1980). While this Court would agree that the factual situations may be somewhat analogous, we do not find their holdings (*i.e.,* that the "transfer" for purposes of the bankruptcy act is the date of the foreclosure sale), to be controlling here in light of the Third Circuit opinions cited above.