In re Merton N. **THAYER** and Verna S. Thayer, Debtors.

**Bankruptcy No. 83–138.**

United States Bankruptcy Court, D. Vermont.

March 6, 1984.

---

Paul B. Wolfe, Newport, Vt., for W.S. Mitchell, Inc.

Richard A. Brownell, Winooski, Vt., for Chittenden Trust Co.

James S. Brock, Montpelier, Vt., for Community Nat. Bank.

Austin B. Noble, and Philip K. Dodd, Montpelier, Vt., for Sperry New Holland Div. of Sperry Rand Corp.

David A. Otterman, Bradford, Vt., for Caledonia Nat. Bank.

Gregory P. Howe, Newport, Vt., for Tessitura N.V. and Elara N.V.

Joseph C. Palmisano, Barre, Vt., Trustee, pro se.

Edwards C. O'Boyle, Jr., St. Johnsbury, Vt., for debtors.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

Prior to filing for relief under chapter 7 of the Bankruptcy Code (Code) on July 6, 1983, Mr. and Mrs. Thayer (Thayers) operated three dairy farms in northeastern Vermont. During the period of operation of the farms, the Thayers purchased most of their farm machinery from W.S. Mitchell, Inc. (Mitchell), a local equipment dealer, on credit advanced by Community National Bank (Community), Chittenden Trust Company (Chittenden), and Sperry New Holland Division of Sperry Rand Corporation (Sperry). This matter comes before the court on the motions of Mitchell, Community, Chittenden, and Sperry—all secured creditors listed on the chapter 7 petition—for relief, under Code section 362(d), from the automatic stay of Code section 362(a).

(Tessitura N.V., Elara N.V., and Caledonia National Bank, although strangers to the matters at issue in the instant motions, were permitted to intervene as they are parties in interest in other contested-matter proceedings in this bankruptcy.)

(The instant § 362(d) motions were originally filed as adversary proceedings under old Bankruptcy Rule 701. Under new Rule 4001(a), the instant dispute is a contested matter; therefore, this memorandum refers to the "complaints" herein as motions.)

Subsequent to the filing of the motions, Chittenden filed a motion to amend and an amended motion, and the trustee moved to dismiss both. The trustee has also filed motions to dismiss Mitchell and Chittenden, and has objected to the standing of Community and Sperry, on the ground that no movant is a secured party.

Consolidated hearings on the lift-stay motions and the motions to dismiss were held, after notice, from time to time. From the records in the case and the testimony adduced at the hearings, facts as follow were established.

## FACTS

AS TO COMMUNITY: On November 22, 1978, the Thayers as buyers entered into a secured retail installment contract with Mitchell as seller for the purchase of 13 pieces of farm equipment. The installment contract incorporated a promissory note in favor of Community for the $70,000.00 cash price of the equipment. The contract contained the following clause: "Title to said property, and to all additions thereto and substitutions thereof, shall remain in the seller until the entire amount due has been paid in cash. Assignee shall be entitled to all rights of the Seller." Mitchell co-signed the note, as assignor to Community as assignee of the retail installment contract, and within three days filed a financing statement, signed by the Thayers, reflecting the assignment, with the Town Clerk of Newport, Vermont, being the town of the Thayers' residence.

On October 9, 1980, Mr. Thayer executed and Mitchell co-signed a separate, unrelated note in favor of Community, in the amount of $15,000, for the consideration of an unsecured loan.

On October 13, 1982, Community refinanced the 1978 and 1980 notes, paying by renewal the outstanding balance of $18,673 on the 1978 note and $5,726 on the 1980 note. Additionally, Community lent $15,601 of fresh money under the renewal note,

yielding an amount financed of $40,000, on a yearly rate of 14.50%. Community stamped the 1978 and 1980 notes "Renewed Oct. 12, 1982" and retained possession of the instruments.

The renewal note was incorporated in a retail installment contract executed by the Thayers, which document contained—as to security for the note incorporated therein—pertinent language as follows:

---

"TYPE OF LOAN:

[x] Secured

[ ] Unsecured

[x] Retail Installment

[ ] Promissory Note"

---

"Rewrite of Note #[1978]–#[1980]–plus $15,601."

---

"Security: You are giving a security interest in:

[x] The goods or property being purchased

[ ] Other ..........................

[ ] Unsecured."

---

"RETAIL: This loan is secured by:

[ ] Motor Vehicle        [ ] Mobile Home        [ ] Camper

EXTRA EQUIPMENT:        [ ] Radio        [ ] Air Cond.        [ ] Auto Trans.

[x] Other

[x] Other (describe here in detail): [itemization of 9 of the pieces of equipment purchased in 1978] [hereinafter referred to as "Lot #1"].

---

In connection with the execution of this 1982 document, no goods or property changed hands in fact; the Thayers executed the document with the subjective intent of granting a security interest, although the following provision of the contract was left blank:

---

"This loan is secured by:

[ ] Security Agreement – If checked, I give you a security interest in the property described below.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

[ ] Mortgage".

---

Mitchell as seller under the retail installment agreement executed a full recourse assignment of the contract to Community and within three days filed financing statements, signed by the Thayers, and indicating the assignment, with the Newport

Town Clerk and the Vermont Secretary of State. On the date the chapter 7 petition was filed, the outstanding balance on the renewal note was $33,892, which sum Mitchell, as full recourse assignor, paid Community when Community called in the note after the Thayers, as chapter 7 debtors, suspended performance on the contract. When the chapter 7 petition was filed, the fair market value of Lot # 1 was $26,050.

On September 20, 1983, Community and Mitchell posted a surety bond with the court for $70,000 and Mitchell, acting for Community, took possession of Lot # 1. The amount of the bond was reduced to $34,243 on November 15, 1983.

AS TO CHITTENDEN: On December 30, 1981, Mr. Thayer executed an installment note for $32,274 in favor of Chittenden for the consideration of a secured loan of $24,063. As security, Mr. Thayer pledged 15 pieces of farm equipment (hereinafter, Lot # 2) purchased from Mitchell in connection with the loan. Mitchell signed the note as endorser and surety, and within three days filed a financing statement, signed by Mr. Thayer, with the Newport Town Clerk. The filed financing statement indicated on its face that it had been assigned by Mitchell as the original secured party to Chittenden as assignee.

On August 2, 1982, the Thayers executed an installment note for $18,924 in favor of Chittenden for the consideration of a secured loan of $13,678. As security, the Thayers pledged a SAME 70 tractor as described in a security agreement of even date signed by the Thayers. Mitchell signed the note as endorser and surety, and eleven days later filed a financing statement, signed by the Thayers, with the Newport Town Clerk. The filed financing statement indicated that it had been assigned by Mitchell to Chittenden.

On June 15, 1983, Chittenden refinanced the 1981 and 1982 notes, marking both notes "Paid by renewal" and incorporating the outstanding balances, in the amounts of $16,858 on the 1981 note and $11,863 on the 1982 note, into the principal balance of the renewal note. Under the renewal note, executed by the Thayers, Chittenden added $13,667 of fresh money to the pot, yielding an amount financed of $42,388, on a yearly rate of 13.75%. Mitchell signed the 1983 renewal note as endorser and surety. Chittenden retained possession of the renewed 1981 and 1982 documents.

In connection with the renewal note, the Thayers granted Chittenden a security interest in Lot # 2 and in a Nasseth manure pump purchased in connection with the renewal loan. Within four days Mitchell filed a financing statement, signed by the Thayers, with the Newport Town Clerk. The filed financing statement indicated on its face that it had been assigned by Mitchell to Chittenden.

Also in connection with the renewal loan, Chittenden signed and delivered to Mitchell a Statement of Termination of Financing with respect to the SAME 70 tractor. It was the subjective intent of the bank officer who signed this statement to release Chittenden's security interest under the financing statement filed in 1982.

The Thayers filed for relief the day before the first payment was due under the renewal note. Since the date of filing, Mitchell has made payments totalling $7,876 to keep the note current. On the date the chapter 7 petition was filed, the outstanding balance on the note was roughly $42,800; the total fair market value of Lot # 2 was $19,850. Additionally, the value of the Nasseth pump was $6,750; and the value of the SAME 70 tractor was $10,000.

Chittenden filed a proof of claim on August 25, 1983.

On September 19, 1983, Chittenden posted a surety bond with the court for $22,500 and Mitchell, acting for Chittenden, took possession of Lot # 2, the Nasseth pump, and the SAME 70 tractor.

AS TO SPERRY: On July 4, 1980, Mr. Thayer as buyer entered into a retail installment contract with Mitchell as seller for the purchase of two pieces of Sperry farm equipment at a deferred payment

price of $11,524 on a cash price of $7,860. The annual percentage rate of interest was 16.00%. On July 29, 1982, Mr. Thayer as buyer entered into a retail installment contract with Mitchell as seller for the purchase price of three pieces of Sperry farm equipment at a deferred payment price of $36,096 on a cash price of $25,950. The annual percentage rate of interest was 17.50%. Each contract provides: "The seller retains title to the goods and a security interest therein and in all replacements and additions thereto, under the Uniform Commercial Code, to secure payment and performance of all obligations of the buyer." Mitchell assigned both contracts to Sperry without recourse, and in timely fashion filed with the Newport Town Clerk a financing statement with respect to each transaction, signed by Mr. Thayer. The filed financing statements reflected the assignment.

On September 19, 1983, Sperry posted a surety bond with the court for $26,660 and Mitchell, acting for Sperry, took possession of the 5 pieces of collateral (hereinafter, Lot # 3). On the date of the filing of the chapter 7 petition the outstanding balance owed Sperry was $20,706. The fair market value of the collateral as to the 1980 note was $6,000, and was $15,000 as to the 1982 note, for a total of $21,000 for the 5 pieces comprising Lot # 3. The value of Lot # 3 is depreciating rapidly.

AS TO MITCHELL: After the filing of the petition for relief, Mitchell, as full recourse assignor of the Thayers' 1982 obligation to Community, paid Community, on demand, $33,892, being the balance due under the 1982 obligation.

Since the filing of the chapter 7 petition, Mitchell as endorser and surety of the Thayers' 1983 obligation to Chittenden, has paid Chittenden $7,876 to keep the 1983 renewal note current. Additionally, Mitchell has, pursuant to an order of this court granting permission, pledged Lot # 2 to Chittenden as security with respect to Mitchell's endorsement and suretyship obligations.

On September 21, 1983, Mitchell posted a surety bond with the court for $70,000. The amount of the bond was subsequently reduced to $43,377.

### MOTIONS TO DISMISS

Code section 362(d) provides: "On request of a party in interest. . . ."

■ The trustee argues that Community is not a party in interest because Community allegedly holds an unperfected security interest in Lot # 1 and such interest "could not withstand the title of the trustee under Code section 544." However, there is no requirement that a creditor be secured to accede to the status of a party in interest under Code section 362(d). *Matter of Holtkamp Farms, Inc.*, 669 F.2d 505, 5 CBC 2d 1412, 1415 (7th Cir.1982). Nevertheless, as Mitchell has paid Community the total accelerated balance due under the 1982 renewal note, Community has been satisfied by payment in full and has no further stake in this proceeding. Therefore, Community is not a party in interest and the trustee's objection to the standing of Community should be sustained.

■ The trustee argues that any security interest which Chittenden may have in Lot # 2 is voidable as a preference under section 547 of the Code. However, there is no requirement in Code section 362(d) that the lift-stay movant, to accede to standing, have a valid lien on property of the estate. *In re Amarex, Inc.*, 30 B.R. 763, 9 CBC 2d 213, 216 (Bkrtcy.W.D.Okl.1983); *see, Collier on Bankruptcy (Collier)* 2:362.07 at 362–44. Nevertheless, as no default has occurred on the 1983 note—Mitchell, as Chittenden's subrogee, having kept the note current—Chittenden has no cause to complain. Accordingly, the motion to dismiss Chittenden should be granted.

■ According to the trustee, Mitchell is "an improper party" because Mitchell has "no proper security interest in any collateral." However, upon payment of the 1982 Thayer-Community obligation, Mitchell was subrogated to the rights of Community as assignee of the financing statement filed

with respect to Lot # 1. In paying down the 1982 note, Mitchell obtained a right of recourse against the Thayers including such rights in Lot # 1 as Community may have had. *See*, 9A Vt.Stat. §§ 3–415(1), (5). Likewise, under ordinary principles of suretyship, Mitchell is the real party in interest with respect to the claims arising out of the 1983 Thayer-Chittenden obligation. Accordingly, the motion to dismiss Mitchell should be denied.

■ As to the motion to dismiss Chittenden's motion to amend and the amended motion, this court as a court of equity may permit a party to file amended motions when justice so requires. The matter raised in the amended motion pertains to the extent of Chittenden's collateral. The matter may be litigated by Mitchell as Chittenden's subrogee; to entertain the proof does not prejudice the trustee. Accordingly, the motion to dismiss the motion to amend and the motion to dismiss the amended motion should be denied.

■ For the reason that Mitchell's assignments to Sperry are without recourse, Sperry is the proper petitioner for relief as to injury due to breach of the 1980 and 1982 contracts. Accordingly, the trustee's objection to the standing of Sperry should be overruled.

## SECURITY INTERESTS

■ AS TO COMMUNITY: The creation of an enforceable security interest requires a writing, supported by consideration and signed by the debtor, containing an adequate description of the collateral and indicating an agreement granting a security interest under which the creditor obtains rights in the collateral. 9A Vt.Stat. §§ 9–203(1)(b), 9–204(1). The 1978 Thayer-Community retail installment contract fulfilled these requirements of Vermont law and the purchase money security interest created by that contract attached when the debtors took possession of Lot # 1. The interest was perfected when Mitchell filed the 1978 financing statement. 9A Vt.Stat. §§ 9–302, 9–303.

■ The trustee argues that the 1978 note was cancelled and the 1978 security interest was incidentally extinguished when the 1982 renewal document was executed. For the reason that the survival of a purchase money security interest is one especially suited for resolution by reference to state law, *In re Conn.*, 16 B.R. 454, 456 n. 1 (Bkrtcy.W.D.Ky.1982); *see, In re Spectra Prism Industries, Inc.*, 28 B.R. 397, 399, 8 CBC 2d 325, 327, 10 BCD 269, 271 (Bkrtcy.App.Cal. 9th Cir.1983) (validity, nature and effect of liens governed by law of state where property is situated), the Court declines to hold that, as a matter of bankruptcy law, a renewal note extinguishes the renewed note.

■ Under Vermont law, the 1982 renewal did not expunge the 1978 obligation for the reasons that (1) the 1978 note was marked "Renewed," not "Paid" or "Cancelled," indicating that the debt had not been paid; (2) Community retained possession of the 1978 note rather than surrendering it to the Thayers, indicating that the Bank intended to hold the 1978 note as outstanding until the renewal note was paid off; and (3) the Thayers executed the renewal note with the subjective intention that the obligation on the 1978 note would be incorporated into the obligation on the renewal note, and Community intended the same. The result is that the $18,673 balance due on the 1978 note, as incorporated into the principal balance of the renewal note, remained secured following the execution of the 1982 document. *See, Pinney v. Kimpton*, 46 Vt. 80 (1873); *Robinson v. Leach, et al.*, 67 Vt. 128, 31 A. 32 (1895) (as long as original debt is not paid, and can be traced, the security remains); *see also, In re McQueen*, 27 B.R. 717, 35 U.C.C. Rep. Serv. 1036 (Bkrtcy.D.Vt.1983); *In re Conn*, *supra*, 16 B.R. 454. The $21,327 remainder of the principal balance of the renewal note is secured by Lot # 1 per the terms of the 1982 document.

■ The trustee points out that the 1982 document is technically infirm in that no "x" marks the box encaptioned, "This loan is secured by Security Agreement."

However, so marked are the boxes entitled, (1) "Type of Loan: Secured Retail Installment," (2) "Security: You are giving a security interest in: the goods or property being purchased," and (3) "RETAIL: This loan is secured by: [itemization of Lot # 1]." Moreover, the 1982 document does not stand alone; it is supported by contemporaneously signed financing statements, subsequently filed with the Secretary of State and the Newport Town Clerk. Together, the documents satisfy the purposes underlying the evidentiary requirements as to the creation of security interests, namely, to prevent a dispute as to precisely what property is encumbered and to avoid the enforcement of claims based solely on oral representations. *See, Finley v. Williams,* 142 Vt. 153, 155, 453 A.2d 85 (1982); *In re Numeric,* 485 F.2d 1328 (1st Cir.1973). Collectively, the 1982 document and the financing statements establish the intention of the Thayers to grant a security interest in identifiable articles of personal property. This security interest is enforceable, by Mitchell as Community's subrogee, as against the trustee, for the reason that, in Vermont, "the bargain of the parties in fact as found in their language or by implication from other circumstances," 9A Vt. Stat. 1–201(3), may be deduced from several documents, *General Motors Acceptance Corporation v. Richard G. Lefevre, Jr. (In re Lefevre ),* 27 B.R. 40 (Bkrtcy.D.Vt.1983), *aff'd,* Civil Action No. 83–93 (D.Vt.1983); *see, In re Bollinger,* 614 F.2d 924 (3d Cir. 1980); *In re Amex-Protein Development Corp.,* 504 F.2d 1056 (9th Cir.1974); *In re Numeric Corp., supra,* in keeping with Vermont Statutes, title 9A, section 1–102, which provides that the "Act shall be liberally construed to ... permit the continued expansion of commercial practices through custom, usage and agreement of the parties."

Under Vermont Statutes, title 9A, section 9–203, a bill of sale, although absolute in form, may be given as security. Uniform Laws Comments 9–203(4). As the enforceability of Community's perfected security interest is not a function of whether such interest is a purchase money security interest, it is not material that nothing was purchased in connection with the 1982 retail installment contract.

The financing statements as filed were effective to perfect Community's security interest, in that the statements satisfied the inquiry notice purpose of the recording statute. The giving of effective notice is all that Vermont, and the Second Judicial Circuit of the United States, require. *In re Excel Stores, Inc.,* 341 F.2d 961, 2 U.C.C. Rep.Serv. 316 (2d Cir.1965); *Rogers v. Whitney,* 99 A. 419, 91 Vt. 79 (1917); *In re My Place or Yours, Inc.,* 34 B.R. 197, 198 (Bkrtcy.D.Vt.1983). It is immaterial that the financing statements show Mitchell as the original secured party whereas the security interests were granted to Community: Community appears as assignee on the face of the financing statements, and a searcher would be put on inquiry that a lien is outstanding against Lot # 1 and would receive sufficient information to enable him to contact the lienor.

AS TO CHITTENDEN: The filing of the financing statements as to Lot # 2 gave effective notice of Chittenden's lien and perfected Chittenden's security interest, notwithstanding that Mitchell acted as the conduit for the filing.

Whether Chittenden's collateral was owned jointly by the Thayers as tenants by the entirety or as tenants in partnership has no impact on the validity of Chittenden's lien for the reason that under either theory of ownership a perfected security interest was in existence as of the date the chapter 7 petition was filed. Vermont Statutes, title 11, section 1201(a) provides that a partner may bind his partnership as to matters within the scope of partnership business. The purchase of farm equipment to operate a partnership farm would be within the scope of partnership business. Thus Mr. Thayer as partner could grant Chittenden a security interest in Lot # 2 as specific partnership property.

Lot # 2 is within Chittenden's reach even if the Thayers' ownership interest is characterized as a tenancy by the entirety. The

collateral was purchased with money advanced by Chittenden, who took a security interest from Mr. Thayer at the time of sale. Thus Lot # 2 was subject to a purchase money security interest in favor of Chittenden when the Thayers obtained possession of the collateral.

Prior to the date the chapter 7 petition was filed, however, Chittenden knowingly and intentionally released its security interest in the SAME 70 tractor. A secured party of record may by his signed statement release all or part of any collateral described in a filed financing statement. 9A Vt.Stat. 9–406. At the hearings, it was established that the Chittenden officer who signed the Statement of Termination of Financing did so with the subjective intention of releasing the tractor. The release was effective upon delivery to Mitchell of the termination statement. That the Thayers were not informed of the release, or that the Statement of Termination was not filed, does not defeat the fact of the release: there is no requirement that such a statement be filed when collateral is released. Section 9–406 Uniform Laws Comments.

AS TO SPERRY: For the reason that the Thayers took Sperry's collateral subject to Sperry's purchase money security interest, and for the reason that Sperry's filed financing statements fulfilled the inquiry notice purpose of the recording statute, Sperry had a perfected security interest in Lot # 3 as of the date the chapter 7 petition was filed.

### TRUSTEE'S POWERS

Code section 544 provides: "the trustee shall have ... the rights and powers of, or may avoid any transfer of property of the debtor ... that is voidable by (1) a creditor ... that obtains ... a judicial lien ... (2) a creditor ... that obtains ... an execution against the debtor that is returned unsatisfied ..."

Sperry holds a valid purchase money security interest in Lot # 3. The interest was perfected by filing prior to the date of the chapter 7 petition. Thus, as of the date of perfection by filing, no lien creditor could obtain rights in Lot # 3 superior to the rights of Sperry. Therefore, the trustee may not, under Code section 544, avoid the lien on Lot # 3.

Likewise, Community held a perfected security interest on the date of filing of the chapter 7 petition, and the trustee may not, under Code section 544, avoid the lien on Lot # 1.

Code section 547 provides that

... the trustee may avoid any transfer of property of the debtor to or for the benefit of a creditor, for or on account of an antecedent debt ... made while the debtor was insolvent and made on or within 90 days before the date of the filing of the petition ... that enables such creditor to receive more than such creditor would receive if ... the transfer had not been made ... The trustee may not avoid ... a transfer ... of a security interest in property acquired by the debtor to the extent such security interest secures new value ... 'new value' ... does not include an obligation substituted for an existing obligation ...

Thus, an avoidable preference is (1) a transfer (2) of property of the debtor (3) for the benefit of a creditor (4) on account of an antecedent debt (5) made (i) while the debtor was insolvent and (ii) within 90 days of seeking relief from the bankruptcy court (6) which transfer enables the creditor to receive more than such creditor would receive if the transfer had not been made. All six elements must be present for a transaction to be a preference under the Code. *Matter of Quest, Inc. of Virginia,* 17 B.R. 359, 361 (Bkrtcy.E.D.Va.1982). The trustee bears the burden of establishing that a transfer constitutes a preference. *In re Music House, Inc.,* 11 B.R. 139, 140 (Bkrtcy.D.Vt.1980).

The trustee argues that the debtor's act of giving Chittenden a security interest in Lot # 2 and the Nasseth pump, in connection with the 1983 renewal loan, constituted a voidable preference. The ar-

gument fails. Chittenden held a perfected security interest in Lot # 2 prior to the negotiation of the renewal loan, which interest was not extinguished as an incident of the renewal. *See, Pinney v. Kimpton, supra,* 46 Vt. 80; *Robinson v. Leach, supra,* 67 Vt. 128, 31 A. 32; *In re McQueen, supra,* 27 B.R. 717; *In re Conn., supra,* 16 B.R. 454. Therefore, with respect to Lot # 2, no transfer in fact took place because no security interest was substituted in 1983 for the 1981 security interest, the 1981 interest having continued uninterrupted and unaffected by the renewal documents. With respect to the Nasseth pump, the giving of the security interest was a contemporaneous exchange for new value under Code section 547(c)(3)(A) and therefore was not on account of an antecedent debt.

■ Further, even if the cummulative granting of the duplicative security interest in Lot # 2 were a transfer within the meaning of section 547, "... the giving of a new chattel mortgage in renewal of an old chattel mortgage, even though the mortgagor is insolvent at the time of the new chattel mortgage, does not constitute a voidable preference." *First National Bank of Clinton v. Julian,* 383 F.2d 329, 334 (8th Cir.1967).

Further, Chittenden's position was not improved through the negotiation of the renewal loan; rather, Chittenden's exposure increased. Under the loan, Chittenden extended $13,677 of fresh money, some of which was used to purchase the Nasseth pump, the remainder of the fresh money being secured by Lot # 2 which was already encumbered well beyond the extent of its value, as follows:

| | |
|---|---|
| amount of 1981 note refinanced | $16,858 |
| amount of 1982 note refinanced | 11,863 |
| total amount of obligations refinanced | 28,721 |
| less: value of Lot # 2 | 19,850 |
| Chittenden's exposure, excluding additional exposure incurred through infusion of 1983 fresh money | 8,871. |

Thus, assuming the 1983 documents created a security interest, Chittenden was not enabled to receive more that it would re-

ceive if such interest had not been created, for the reason that Chittenden was undersecured even before Chittenden augmented the debt without receiving equivalent collateral.

## SECURED CLAIMS

As of the date of the petition for relief, the outstanding balance on Community's renewal note was $33,892 and the value of Lot # 1 was $26,050. Thus Mitchell as Community's subrogee holds an allowable secured claim of $26,050 and an unsecured claim of $7,842 ($33,892 less $26,050). Code § 506(a).

The outstanding balance on Chittenden's renewal note was $42,388 and the value of Chittenden's collateral was $26,600 computed as the value of Lot # 2 ($19,850) plus the value of the Nasseth pump ($6,750). Thus Mitchell as Chittenden's subrogee holds an allowable secured claim of $26,600 and an unsecured claim of $15,788. *Id.*

The outstanding balance on Sperry's contract was $20,706 and the value of Lot # 3 was $21,000. Thus Sperry holds an allowable secured claim of $20,706 plus interest at the contract rate of 17.50% to the extent of $294 ($21,000 less $20,706). Code § 506(b).

## RELIEF FROM STAY

■ Code section 362(d) provides that "... the court shall grant relief from the stay ... if the debtor does not have an equity in such property ..." Codes section 362(g) provides that "... the party requesting such relief has the burden of proof on the issue of the debtor's equity ..."

Mitchell has established that Community's secured claim is equal to the value of Lot # 1 ($26,050). Therefore, there is no equity in Lot # 1. Accordingly, the request for relief from the automatic stay of Code section 362(a) should be granted as to Lot # 1.

Mitchell also established that Chittenden's secured claim is equal to the value of Chittenden's collateral ($26,600). Therefore, there is no equity in Lot # 2 or the

Nasseth pump. Accordingly, the request for relief from the automatic stay of Code section 362(a) should be granted as to Chittenden's collateral.

Sperry has established that the value of its secured claim is equal to the value of Lot # 3. Therefore, there is no equity in Lot # 3. Accordingly, the request for relief from the automatic stay should be granted as to Lot # 3.

### ORDER

Upon the foregoing,

IT IS ORDERED:

1. that the trustee's objection to the standing of Community be, and hereby is SUSTAINED; and that Community's bond be, and hereby is, RELEASED;

2. that the motion to dismiss Chittenden be, and hereby is, GRANTED; and that Chittenden's bond be, and hereby is, RELEASED;

3. that the trustee's objection to the standing of Sperry be, and hereby is OVERRULED; that Sperry's request for relief from stay be, and hereby is, GRANTED; and that Sperry's bond be, and hereby is, RELEASED;

4. that the motion to dismiss Mitchell be, and hereby is, DENIED;

that the motion to dismiss Mitchell's motion to amend be, and hereby is DENIED;

that the motion to dismiss Mitchell's amended motion be, and hereby is DENIED;

that Mitchell's request for relief from stay be, and hereby is GRANTED as to Lot # 1, Lot # 2 and the Nasseth pump, and DENIED as to the SAME 70 tractor; and that Mitchell's bond be, and hereby is, RELEASED except for $10,000 to be paid to the trustee with respect to the SAME 70 tractor.